**LATHAM & WATKINS LLP**
Michael H. Rubin (CA Bar No. 214636)
*michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Gary Feinerman (admitted *pro hac vice*)
*gary.feinerman@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone +1.312.876.7700

*Attorneys for Defendant MUBI, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SAMUEL EDWARDS, MICHELLE BROWN, DENNIS DEPEW, CINTHIA DAVIS MARITZA HERNANDEZ, SIOSIUA MAFOA, JOHN DOE, AALANY MCMAHAN, and DEBJANI SARKAR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MUBI, INC.,<br><br>Defendant. | Case No. 5:24-cv-00638-EJD<br><br>**DEFENDANT MUBI, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: October 10, 2024<br>Time: 9:00 A.M.<br>Court: Courtroom 4, 5th Floor<br>Hon. Edward J. Davila |

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE COURT, CLERK, PLAINTIFFS AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 10, 2024, at 9:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California, Defendant MUBI, Inc. will and hereby does move for an order dismissing the First Amended Class Action Complaint (Dkt. 25, "FAC").

Plaintiffs' claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 *et seq*., should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing to bring that claim; Plaintiffs' claims should be dismissed in their entirety under Federal Rule of Civil Procedure 12(b)(6) because the FAC fails to state a claim as a matter of law; and Plaintiffs' request for injunctive relief should be dismissed under Rule 12(b)(1) because Plaintiffs do not allege an imminent future harm and thus lack Article III standing to seek such relief.

This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the concurrently filed Request for Incorporation and Judicial Notice; the concurrently filed Declaration of Michael Rubin and exhibits thereto; the pleadings and papers on file in this action; the arguments of counsel; and any other matter that the Court may properly consider.

**STATEMENT OF RELIEF SOUGHT**

MUBI, Inc. seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the FAC for failure to state a claim as a matter of law and Federal Rule of Civil Procedure 12(b)(1) dismissing Plaintiffs' VPPA claim and request for injunctive relief for lack of standing.

DATED: June 5, 2024

LATHAM & WATKINS LLP

By: /s/ Michael H. Rubin
Michael H. Rubin (CA Bar No. 214636)
*michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Gary Feinerman (admitted *pro hac vice*)
*gary.feinerman@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone +1.312.876.7700

*Attorneys for Defendant MUBI, Inc.*

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................ 1

II. BACKGROUND ........................................................ 3

A. MUBI's Platform and Extensive Privacy Disclosures ........................ 3

B. Plaintiffs' Alleged Experiences on MUBI's Platform ........................ 5

III. LEGAL STANDARD ........................................................ 6

IV. ARGUMENT ........................................................ 7

A. Plaintiffs' VPPA Claim Should Be Dismissed ........................ 7

1. Plaintiffs Lack Standing To Pursue Their VPPA Claim ........................ 7

2. Plaintiffs Do Not Plausibly Allege that MUBI Disclosed Which Specific Videos They Requested or Obtained ........................ 9

B. Plaintiffs' Section 1799.3 Claim Should Be Dismissed ........................ 11

1. Plaintiffs Do Not Plausibly Allege that MUBI Disclosed a "Record" of "Sales or Rental Information" ........................ 11

2. Plaintiffs Provided "Written Consent" to the Disclosure of Their Information ........................ 13

3. Plaintiffs Fail to Allege that MUBI Is in the Business of Providing "Video Recording Sales or Rental Services" ........................ 16

4. Plaintiffs' Section 1799.3 Claim Fails as to the X and TikTok Pixels Because They Do Not Allege Transmission of Identifiable Information ........................ 16

C. Plaintiffs' CIPA Claim Should Be Dismissed ........................ 17

1. Plaintiffs Explicitly Consented to the Disclosure of Their Information ........................ 18

2. Plaintiffs Fail to Satisfy Additional Elements of the CIPA Claim ........................ 19

D. Plaintiffs Do Not Adequately Plead a UCL Claim ........................ 22

1. Plaintiffs Lack Statutory Standing to Pursue a UCL Claim ........................ 22

2. Plaintiffs Do Not Plead an Inadequate Remedy at Law ........................ 23

3. Plaintiffs Do Not State a Claim Under Any UCL Prong ........................ 23

E. Plaintiffs Lack Article III Standing to Seek Injunctive Relief ........................ 25

V. CONCLUSION ........................................................ 25

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 7

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021) ..... 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 7

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ..... 15

*Brickfire LLC v. Aetna Life Ins. Co.*,
2024 WL 1121007 (C.D. Cal. Feb. 16, 2024) ..... 23

*Cal. Crane Sch., Inc. v. Google LLC*,
2024 WL 1221964 (N.D. Cal. Mar. 21, 2024) ..... 24

*Caldwell v. Nordic Nats., Inc.*,
2024 WL 24325 (N.D. Cal. Jan. 2, 2024) ..... 25

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ..... 24

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..... 7, 25

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ..... 24

*De Vries v. Regents of Univ. of California*,
6 Cal. App. 5th 574 (2016) ..... 16

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) ..... 24

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (2017) ..... 9, 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,
528 U.S. 167 (2000) ..... 25

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ..... 18

*Garner v. Amazon.com, Inc.*,
603 F. Supp. 3d 985 (W.D. Wash. 2022) ..... 18

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ..... 23

*Hamm v. Mercedes-Benz USA, LLC*,
2022 WL 913192 (N.D. Cal. Mar. 29, 2022) .......... 23, 25

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 20, 24

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) .......... 20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 20

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 19

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) .......... 23

*Lee v. DoNotPay, Inc.*,
683 F.Supp.3d 1062 (C.D. Cal. 2023) .......... 14

*Letizia v. Facebook Inc.*,
267 F. Supp. 3d 1235 (N.D. Cal. 2017) .......... 25

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 21

*Markels v. AARP*,
2023 WL 6411720 (N.D. Cal. Aug. 29, 2023) .......... 23

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023).......... 2, 10

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .......... 9

*NetChoice, LLC v. Bonta*,
2023 WL 6135551 (N.D. Cal. Sept. 18, 2023) .......... 13

*Nikoopour v. Ocwen Loan Servicing, LLC*,
2018 WL 3007918 (S.D. Cal. June 14, 2018).......... 24

*Oberstein v. Live Nation Entm't., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 14, 15

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
2016 WL 6393503 (N.D. Cal. Oct. 28, 2016).......... 22

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 21

*San Diegans for Open Gov't v. City of San Diego*,
242 Cal. App. 4th 416 (2015) ........ 12

*Schramm v. JPMorgan Chase Bank, N.A.*,
2014 WL 12633527 (C.D. Cal. July 10, 2014) ........ 25

*Schroeder v. United States*,
569 F.3d 956 (9th Cir. 2009) ........ 23

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ........ 18

*Soman v. Alameda Health Sys.*,
2023 WL 336632 (N.D. Cal. Jan. 20, 2023) ........ 8

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 23

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ........ 13

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ........ 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 7

*Stark v. Patreon, Inc.*,
656 F. Supp. 3d 1018 (N.D. Cal. 2023) ........ 17

*Stephens v. I.C. Sys., Inc.*,
2023 WL 4316788 (C.D. Cal. Apr. 6, 2023) ........ 8

*Summers v. Earth Is. Inst.*,
555 U.S. 488 (2009) ........ 25

*Swarts v. Home Depot, Inc.*,
2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ........ 21

*Trammell v. KLN Enters., Inc.*,
2024 WL 1722243 (S.D. Cal. Apr. 22, 2024) ........ 25

*TransUnion v. Ramirez*,
594 U.S. 413 (2021) ........ 1, 7, 8

*Tritz v. U.S. Postal Serv.*,
721 F.3d 1133 (9th Cir. 2013) ........ 18

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 21

*Valenzuela v. Super Bright LEDs, Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ........ 20

*Van Patten v. Vertical Fitness Group, LLC*,
847 F.3d 1037 (9th Cir. 2017) ........ 22

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 20

**STATUTES**

18 U.S.C. § 2710 *et seq* ........ 1

18 U.S.C. § 2710(a)(3) ........ 1, 2, 9

18 U.S.C. § 2710(b)(1) ........ 9

18 U.S.C. § 2710(b)(2) ........ 9

18 U.S.C. § 2710(c)(1) ........ 1

Cal. Civ. Code § 1799.3 ........ *passim*

Cal. Penal Code § 631(a) ........ 17, 18, 21

**RULES**

Fed. R. Civ. P. 12(b)(1) ........ 7

Fed. R. Civ. P. 12(b)(6) ........ 7

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs' claim under the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.*, should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.

2. Whether Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

3. Whether Plaintiffs' request for injunctive relief should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.

## I. INTRODUCTION

MUBI, Inc. is an online film production company and distributor that showcases and promotes a curated selection of high-quality films and provides a broader film database for discussing films. Most of the film titles available to browse or discuss are not even available to watch on MUBI's platform. To watch films that are available on the platform, an individual must create an account and agree to MUBI's Terms of Service and Privacy Policy. Plaintiffs are MUBI subscribers who allege that MUBI disclosed their video viewing history without their consent, in violation of the Video Protection Privacy Act ("VPPA"), 18 U.S.C. § 2710 *et seq*., and California law, through its use of an ordinary website analytics tools known as a "pixel." But, as the FAC itself shows, MUBI neither disclosed Plaintiffs' video viewing history to others nor acted without their informed consent. This manufactured lawsuit should be dismissed for the following reasons:

*First*, Plaintiffs lack Article III standing to bring a VPPA claim. Plaintiffs' own allegations demonstrate that they agreed to MUBI's Terms, which included granular explanations of MUBI's use of website analytics tools and clear instructions on how to disable them. Plaintiffs suffered no concrete harm from the alleged disclosure of their information through these tools because they consented to any such disclosure. Plaintiffs allege that they were harmed because MUBI's robust disclosures did not *precisely* adhere to the VPPA's technical formatting requirements regarding consent—*e.g.*, the disclosures were "stated within the Privacy Policy and not in a separate and distinct form." FAC ¶ 67. The Supreme Court's decision in *TransUnion v. Ramirez*, 594 U.S. 413 (2021), squarely rejects this kind of procedural "formatting error" as a basis for Article III standing. *Id.* at 440-41. And the only possible remedy for Plaintiffs' lack of standing is dismissal of the VPPA claim, not remand, since VPPA claims may not proceed in state court. *See* 18 U.S.C. § 2710(c)(1) (providing for cause of action "in a United States district court").

*Second*, even if Plaintiffs had standing to bring a VPPA claim, the claim—which is based solely on MUBI's use of the Meta Pixel analytics tool—fails as a matter of law because the FAC does not plausibly allege that MUBI disclosed to others the films that they "requested or obtained." 18 U.S.C. § 2710(a)(3). The VPPA governs disclosures of "personally identifiable information" ("PII"), which the statute uniquely—and narrowly—defines as "information which identifies a

person as having requested or obtained specific video materials or services." *Id*. The FAC does not allege that MUBI disclosed any specific video that Plaintiffs watched. Rather, Plaintiffs allege that MUBI disclosed only "PageView" events to Meta, which contained the URLs of the webpages that subscribers visit on MUBI's platform. That URL data, however, does not show that a user in fact *requested or obtained* any specific video materials; instead, as Plaintiffs' allegations reflect, the URL data shows, at most, that a user *visited* a specific webpage. Given the VPPA's narrow definition of PII, MUBI's alleged disclosures of those PageView events do not fall within the statute's scope. *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) (dismissing VPPA claim because, "[e]ven for those pages that do include videos, merely disclosing the name of the webpage does not indicate that a website visitor requested or obtained specific video materials on that webpage").

*Third*, Plaintiffs' claim under Cal. Civ. Code § 1799.3 (the California analog to the VPPA) fails for multiple reasons. As with their VPPA claim, Plaintiffs do not allege that MUBI disclosed their "sales or rental information," as Section 1799.3 requires. Cal. Civ. Code § 1799.3(a). Moreover, Plaintiffs provided "written consent" to any such disclosures within the meaning of Section 1799.3 when they agreed to MUBI's Terms. *Id*. Plaintiffs' own allegations demonstrate that the Terms included granular explanations of MUBI's use of website analytics tools and clear instructions on how to disable them. Finally, MUBI is not even in the business of providing the "video recording sales or rental services" that Section 1799.3 reaches. *Id.*

*Fourth*, Plaintiffs' consent to MUBI's Terms also dooms their wiretapping claim under the California Invasion of Privacy Act ("CIPA"). Plaintiffs' theory is that MUBI aided and abetted Meta in unlawfully accessing Plaintiffs' "communications" with the MUBI website. But MUBI expressly disclosed (and Plaintiffs agreed to) its use of the Meta Pixel and other analytics tools to share their website interactions with "advertisers, ad servers, and ad networks," including Meta. Plaintiffs also fail to allege essential elements of their CIPA claim, including (i) the disclosure of the *contents* of any communication, as opposed to nonactionable "record information" from the disclosed PageView events; and (ii) the interception of communications while those communications were *in transit.* Each of these grounds is sufficient for dismissal.

*Fifth*, Plaintiffs' California Unfair Competition Law ("UCL") claim fails because they cannot establish statutory standing, do not plead an inadequate remedy at law, and do not allege any unlawful, unfair, or fraudulent conduct.

*Finally*, Plaintiffs' request for injunctive relief fails for lack of Article III standing because they do not allege an imminent risk of future harm.

## II. BACKGROUND[1]

### A. MUBI's Platform and Extensive Privacy Disclosures

MUBI is an online film production company and distributor that showcases and promotes a curated selection of high-quality films. FAC ¶¶ 1, 37 & n.1. Unlike traditional streaming services, most of MUBI's platform is dedicated to allowing MUBI users and subscribers to explore, learn about, and discuss films with other MUBI subscribers. The great majority of films on the platform cannot be watched there; instead, the bulk of MUBI's website is dedicated to hosting a community-driven film database and online film magazine.

Anyone who visits MUBI's website first encounters a cookie banner, which gives visitors the direct and immediate opportunity to accept or reject cookies:




Exs. B-C.[2] Rejecting cookies operates to prevent pixels from disclosing to advertising networks information about a particular visitor. *See* FAC ¶¶ 41-52 (alleging the Meta Pixel transmits user identifiable information stored in cookies); *id.* Fig. 15 (MUBI Privacy Policy) ("We also market our own products and services on social media and use cookies to help with this. For example, we

---

[1] The well-pleaded facts alleged in the FAC are assumed true only for purposes of this motion.

[2] MUBI concurrently filed a Request for Judicial Notice and Incorporation by Reference for portions of MUBI's website and the legislative history of Section 1799.3, which materials are attached as exhibits to the concurrently filed Declaration of Michael Rubin ("Rubin Decl.").

place a pixel on our sites that allows Facebook to place cookies on web browsers.").

To access MUBI's film library and discuss films with MUBI's community of cinema lovers, a user must create a MUBI account, provide certain information, and pay a monthly or annual subscription fee. *Id.* ¶ 37. When creating a MUBI account, a user is presented with MUBI's Terms of Service and Privacy Policy, and informed: "By clicking 'Get started' you are indicating that you have *read and agree* to the <Terms of Service> and <Privacy>." *Id.* ¶ 63 (emphasis added). Later in the enrollment process, when a user inputs their payment details, MUBI provides another link to its Terms above the button for the user to start a free trial and become a subscriber. *Id.* ¶ 64 & Fig. 12. As Plaintiffs acknowledge, the hyperlinks in these disclosures are "to separate webpages containing MUBI's full Terms of Service and Privacy Policy." *Id.* ¶ 65.

MUBI's Privacy Policy has detailed disclosures about how MUBI collects, uses, and shares its subscribers' data. *Id.* ¶ 68 & Figs. 13-15.[3] Pertinent here, the Policy provides extensive and detailed disclosures about MUBI's use of cookies and similar technologies for advertising. The Policy's "Collecting Information" section states that MUBI may collect information "via the use of cookies, web beacons and other technologies, including ad data (such as information on the availability and delivery of ads, the site URL, as well as the date and time)." *Id.* Fig. 13. The "Using Information" section states that MUBI will use information "to personalise content, services and communications and target advertising," including through "the use of cookies and other similar technologies." *Id.* That section also states: "To learn more or to see how you can opt out of targeted advertising, please see the section on Cookies and other technologies below." *Id.* And the "Disclosing Information" section states: "We share your information with advertisers, ad servers, and ad networks (*including* but not limited to Google Analytics, *Facebook Pixel*, and Facebook Offline Events) to select and deliver advertising and content, and target and personalise advertising content both on our sites and on selected partner sites." *Id.* Fig. 14 (emphases added).

The Privacy Policy then has a detailed section titled "Cookies, Web Beacons, and other

---

[3] The Complaint excerpts the Privacy Policy in full. FAC, Figs. 13-15, 26-27. A legible copy can be viewed at https://mubi.com/en/privacy_policy (Rubin Decl., Ex. A).

Technologies." *Id*. Fig. 15. This section has three subsections describing the use of cookies and similar technologies for advertising. *Id*. ("(iii) Advertising cookies …", "Third party advertising cookies", and "Social media cookies"). It explains that MUBI uses pixels in combination with cookies for advertising and analytics purposes, and describes how subscribers can opt out of MUBI's use of these technologies. *Id*. ("You can opt out of receiving interest based advertising on our sites by blocking these cookies as described below in the section on How to manage or refuse cookies and similar technologies."). Then, under the heading "How to manage or refuse cookies and similar technologies," the section explains in detail how subscribers can manage browser settings, turn off third-party cookies related to interest-based advertising, and opt out of the Facebook Pixel Advertising cookie. *Id*. The list of opt-out options is set forth in a separate format from, and is in the same font and text size as, the rest of the Policy, making it clearly visible and distinct for subscribers who wish to opt out. *Id*. ¶ 68 & Figs. 15, 27.

In addition, and to make things even easier for subscribers, the top of the Privacy Policy has a navigation bar on the lefthand side with a link directly to "Cookie Preferences":

TERMS & CONDITIONS

MUBI GO TERMS & CONDITIONS

NOTEBOOK TERMS & CONDITIONS

PRIVACY POLICY

COOKIE PREFERENCES

REFERRALS TERMS & CONDITIONS

*Id*. Fig 13. Clicking "Cookie Preferences" takes the subscriber to a page with an easy link to manage their cookie preferences (*see* Ex. D):

COOKIE PREFERENCES

We use cookies to ensure that we give you the best experience on our website. **Click here** for more information.

Set your cookie preferences

**B. Plaintiffs' Alleged Experiences on MUBI's Platform**

Plaintiffs claim to be MUBI subscribers with active Facebook accounts. FAC ¶¶ 71, 74,

84, 96, 107, 118, 129, 140, 151, 162. Plaintiffs each claim to have created a MUBI account, a process that necessarily would have prompted them to read and agree to MUBI's Terms of Service and Privacy Policy. *Id.* ¶¶ 63-65 & Figs. 10-12. The Privacy Policy was last updated before Plaintiffs' enrollment in MUBI.

Plaintiffs' core allegation is that MUBI used routine advertising technologies—specifically, pixels from Meta, TikTok, and X—to disclose their video viewing history to third-party advertisers without their consent. *Id.* ¶¶ 4, 34, 54. The Meta Pixel is customizable technology that allows a business to better understand certain actions taken on its website. *Id.* ¶ 35. Plaintiffs allege that MUBI configured the Meta Pixel to send Meta the "PageView" event. *Id.* ¶ 39 & n.29. The PageView event transmits the URL of the webpages a user visits on MUBI's platform—which allegedly can contain the title of a video—and cookie data. *Id.* ¶¶ 39-41 & Figs. 2-5. Plaintiffs further allege that the cookie information transmitted via a Meta Pixel contains a user identifier that can be entered on facebook.com to reveal the user's identity. *Id.* ¶¶ 42, 47-48.

Plaintiffs allege that the TikTok Pixel transmits to TikTok "Page View" (which transmits a URL, time stamp, and page load time) and "View Content" (which transmits the same data as a Page View and "pixel code") events and cookie data. *Id.* ¶¶ 56-58 & Figs. 6-7. They likewise allege that the X Pixel transmits to X the URL of the webpage visited. *Id.* ¶ 58. As with the Meta Pixel, Plaintiffs allege that the URLs transmitted by the TikTok and X Pixels contain the title of a video. *Id.* ¶¶ 56, 58. Plaintiffs do *not* allege that either the TikTok or X Pixel transmits information sufficient to allow an ordinary person to identify the user whose information is being transmitted.

Plaintiffs filed this suit on January 10, 2024, in state court. On February 2, 2024, MUBI timely removed the case to federal court. *See* Dkt. 1. On April 24, 2024, Plaintiffs filed the FAC, which alleges that MUBI's use of the Meta Pixel violates the VPPA and CIPA, that MUBI's use of the Meta, TikTok, and X Pixels violates Section 1799.3, and that these violations provide grounds for a claim under the UCL.

## III. LEGAL STANDARD

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). A "concrete" injury must be "'real, and not abstract,'" not merely "procedural." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* at 431. If a plaintiff lacks Article III standing to bring a claim, the claim must be dismissed under Rule 12(b)(1).

A claim should be dismissed under Rule 12(b)(6) if it does not allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Taking only "well-pleaded factual allegations" as true, a court "determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## IV. ARGUMENT

### A. Plaintiffs' VPPA Claim Should Be Dismissed

#### 1. Plaintiffs Lack Standing To Pursue Their VPPA Claim

Plaintiffs do not have Article III standing to bring their VPPA claim. Article III requires a plaintiff to plead a "concrete" injury, meaning a "harm with a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 440. "[B]are procedural violation[s], divorced from any concrete harm," do not satisfy Article III. *Id*. at 440.

Here, instead of alleging that they suffered actual harm, Plaintiffs allege at most a "procedural violation" of the VPPA. Plaintiffs allege that they are MUBI subscribers (*e.g.*, FAC ¶ 72), and that all MUBI subscribers are required to agree to the Terms and Privacy Policy in order to use MUBI's services (*id.* ¶¶ 63-64). The information MUBI allegedly disclosed to Meta was collected only from subscribers, meaning that the information could have been collected and disclosed only *after* Plaintiffs agreed to MUBI's Terms and bypassed the opt-out provisions. *E.g.*, *id.* ¶ 72 ("Once Plaintiff [] created a [MUBI] account, Defendant disclosed his PII to Meta."). And, as Plaintiffs allege, MUBI's Terms explicitly disclose to users that MUBI "shares consumer's PII

'with advertisers, ad servers, and ad networks (including but not limited to … Facebook Pixel)." *Id.* ¶ 66. So Plaintiffs' real complaint is not that they were deprived of information about these technologies, or the chance to opt out, but rather that MUBI did not obtain their consent in the specific "separate and distinct *form* (as required by VPPA)." *Id.* ¶ 62 (emphasis added).

This kind of "injury" does not suffice under Article III. The Supreme Court has plainly held that receipt of information that was "formatted incorrectly" is not a concrete injury under Article III because it does not resemble a "'traditionally' recognized" harm. *TransUnion*, 594 U.S. at 440-41. Courts routinely apply this principle in dismissing statutory claims arising from mere alleged formatting errors. *See, e.g.*, *Stephens v. I.C. Sys., Inc*., 2023 WL 4316788, at *5 (C.D. Cal. Apr. 6, 2023) (dismissing Fair Debt Collection Practices Act claim because plaintiff could not "establish that he suffered a concrete injury" based on the alleged violation of the statute's letter formatting requirements); *Soman v. Alameda Health Sys*., 2023 WL 336632, at *4 (N.D. Cal. Jan. 20, 2023) (dismissing Fair Credit Reporting Act claim where plaintiff alleged only that she "was deprived of the opportunity to evaluate a clear disclosure of specifically what would occur with respect to her private consumer information"). As in *TransUnion*, a formatting error is the most Plaintiffs claim here—they received the necessary disclosures about the use of pixel technologies and how to opt out, but their complaint is that the disclosures were not presented precisely in the form the VPPA requires (*e.g.*, on a separate page). Plaintiffs thus do not plead "any evidence of harm caused by the format of" MUBI's Terms—which means they fail to allege a "concrete harm." *TransUnion*, 594 U.S. at 440.

Plaintiffs also do not allege that they "would have done anything differently" had MUBI formatted its disclosures in the manner supposedly required by the VPPA. *Soman*, 2023 WL 336632, at *4. Plaintiffs claim that they would not have paid full price for a subscription if they had "been aware" of MUBI's data sharing practices, but do not allege that they somehow would have "been [made] aware" of those terms if they had been reproduced in a supposedly VPPA-compliant form as opposed to the detailed form they acknowledge having read and consented to. *E.g.*, FAC ¶ 92. Because Plaintiffs cannot satisfy the constitutional minimum of Article III standing for their VPPA claim, the claim should be dismissed.

**2. Plaintiffs Do Not Plausibly Allege that MUBI Disclosed Which Specific Videos They Requested or Obtained**

Even if Plaintiffs had Article III standing, their VPPA claim should be dismissed because they do not plausibly allege, as the VPPA requires, that MUBI disclosed which particular videos they "requested or obtained." 18 U.S.C. § 2710(a)(3).

Congress enacted the VPPA to address a specific type of disclosure. In 1988, the *Washington City Paper* published Judge Bork's video rental history after "[t]he paper had obtained (without Judge Bork's knowledge or consent) a list of the 146 films that the Bork family had rented from a Washington, D.C.-area video store." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015). In response, Congress enacted the VPPA to prohibit, absent certain exceptions, brick-and-mortar video stores from disclosing any consumer's "personally identifiable information." 18 U.S.C. § 2710(a)(3), (b)(1), (b)(2). Specifically, the VPPA prohibits "[a] video tape service provider [from] knowingly disclos[ing] … personally identifiable information concerning any consumer of such provider," *id.* § 2710(b)(1), absent consent or other exceptions, *id.* § 2710(b)(2).

"Personally identifiable information," or PII, is a term of art in VPPA, defined narrowly as "information which identifies a person as having *requested or obtained specific video materials or services* from a video tape service provider." *Id.* § 2710(a)(3) (emphasis added). As the Senate Report cited by Plaintiffs makes clear, PII is limited to a user's video viewing information:

> [PII] is information that *identifies a particular person as having engaged in a specific transaction* with a video tape service provider. The bill *does not restrict the disclosure of information other than personally identifiable information*. Thus, for example, a video tape service provider is not prohibited from responding to a law enforcement agent's inquiry as to whether a person patronized a video tape service provider at a particular time or on a particular date.

S. Rep. No. 100-599, at *12 (1988) (emphases added); FAC ¶¶ 24-27. Consistent with this point, the Ninth Circuit has held that PII includes "*only* that information that would 'readily permit an ordinary person to identify a specific individual's *video-watching behavior*.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (emphases added, citations and quotations omitted).

The FAC does not plausibly allege that MUBI disclosed Plaintiffs' PII—*i.e.*, any specific video they requested or obtained. As noted, Plaintiffs' VPPA claim is limited to MUBI's use of the Meta Pixel, which allegedly allowed MUBI to send a PageView event to Meta. FAC ¶¶ 39, 183. That allegation can support a viable VPPA claim only if a PageView transmits information regarding Plaintiffs' "video-watching behavior." *Eichenberger*, 876 F.3d at 985 (citation omitted).

The FAC alleges no such thing. Rather, it alleges that the PageView event transmits the URLs of the webpages that Plaintiffs visited on MUBI's website. FAC ¶¶ 39-40 & Figs. 2-5. But a user can visit a webpage without requesting or obtaining—let alone watching—a video, just like a customer could once walk Blockbuster's aisles and browse through videotapes to see if any were worth renting. Indeed, as noted, most films showcased on MUBI's platform cannot even be watched there. To watch a film on MUBI, a user must click the play button *after* they land on a film's page (*id*. Figs. 1, 3)—and Plaintiffs do not allege they did that. And Plaintiffs do not (and could not) plausibly allege that a PageView transmits any information beyond the fact that they visited a page. A page visit, just like picking up a VCR cassette at Blockbuster to read the cover, is not the kind of information protected by the VPPA.

Recognizing this very point, the court in *Martin v. Meredith Corp.*, *supra*, held that the defendant's disclosure of the URL data associated with webpages visited by the VPPA plaintiff was insufficient to establish that the plaintiff actually requested or obtained specific video material content. As Judge Cote reasoned: "Even for those pages that do include videos, merely disclosing the name of the webpage does not indicate that a website visitor requested or obtained specific video materials on that webpage." 657 F. Supp. 3d at 284. The same result obtains here.

In sum, Plaintiffs improperly seek to extend liability under the VPPA from what it actually covers—records showing that a user "requested or obtained" a specific video—to records showing that a user *considered, discussed, or learned about* a video. *See Eichenberger*, 876 F.3d at 985 (VPPA covers "only" information revealing "a specific individual's video-watching behavior") (internal citations and quotations omitted). Plaintiffs' VPPA claim therefore should be dismissed.

**B. Plaintiffs' Section 1799.3 Claim Should Be Dismissed**

Although Section 1799.3 and the VPPA were drafted at the same time to address the same concern—the protection of video rental records—they differ somewhat in language and approach. As Section 1799's legislative sponsor explained, the bill that became Section 1799.3 was introduced "in response to the recent Senate confirmation process of Judge Robert Bork" to ensure that, while Congress considered enacting the VPPA, there were video rental record "protections in California law." *See* Ex. E, at 1 (Hearing on S.B. No. 2248 Before the S. Comm. on the Judiciary, 1987-88 Reg. Sess. (Cal. 1988)). Section 1799.3(a) prohibits "providers of video recording sales or rental services" from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that [provider], to any person, other than the individual who is the subject of the record, without the written consent of that individual." Cal. Civ. Code § 1799.3(a). Plaintiffs' Section 1799.3 claim should be dismissed on the same ground as their VPPA, and on several other grounds as well.

**1. Plaintiffs Do Not Plausibly Allege that MUBI Disclosed a "Record" of "Sales or Rental Information"**

Plaintiffs' Section 1799.3 claim fails for essentially the same reason as their VPPA claim: the FAC does not plausibly allege that MUBI disclosed information protected by the statute.

Like the VPPA, Section 1799.3 governs the disclosure of video recording or sales records linked to a particular individual. As the statutory text makes clear, video history must not be disclosed "to any person, other than *the individual who is the subject of the record*, without the written consent of *that individual*." Cal. Civ. Code § 1799.3(a) (emphasis added). The right to bring a Section 1799.3 claim belongs only to "the person who is the subject of the records." *Id.* § 1799.3(c). These provisions make linguistic and common sense only if Section 1799.3 is understood to exclusively govern information that links specific video sales or rental history to a specific individual. The fact that Section 1799.3 was codified under Civil Code Title 1.82, which governs "Business Records," supports the proposition that disclosure of personal information alone, without linking that information to video sales or rental records, is not covered.

Further confirmation comes from legislative history, which shows that the California

Legislature intended Section 1799.3 to protect the same interests as the VPPA. For example, a report from the Senate Committee on Judiciary states that the "purpose of this bill is to protect the privacy of those persons who *rent or buy* video cassette movies." Ex. F, at 2 (Rep. on S.B. No. 2248, 1987-88 Reg. Sess. (Cal. 1988)) (emphasis added). The Senate Report similarly states that the bill would prohibit "individuals or businesses providing video cassette sales or rental services from disclosing the contents of records [they] prepared or maintained … without the written consent of the subject of those records." Ex. G, at 1 (Legis. Counsel's Digest on S.B. No. 2248).

The FAC suggests that the word "or" in the statutory phrase "any personal information or the contents of any record, including sales or rental information" means that Section 1799.3 liability arises if the defendant discloses *either* "personal information" *or* "the contents of any record." FAC ¶¶ 28-29. That cannot possibly have been the legislature's intent. As an initial matter, that reading cannot be reconciled with the fact, just noted, that only "the subject of the records," Cal. Civ. Code § 1799.3(c), can bring a Section 1799.3 claim. Nor can Plaintiffs' reading be reconciled with legislative history, which makes clear that the statute is directed at information that links an individual with sales or rentals of particular videos. *See, e.g.*, Ex. F, at 2 (the bill is meant "to protect the privacy of those persons who rent or buy video cassette movies.").

Moreover, divorcing "personal information" from "the contents of any record" would lead to absurd results. Under Plaintiffs' reading of Section 1799.3, a video store using third party services to send emails to their customers would be liable for disclosing their customers' "personal information" to the third party even though it never disclosed any of its viewing histories. Likewise under Plaintiffs' strained reading, video-streaming services releasing information about "Top 10" rentals would be liable for disclosing "sales or rental information" even though the information was aggregated and anonymous. There is no indication in the legislative history—or any case law in the forty years since Section 1799.3's enactment—that the law was intended to sweep so broadly. *See San Diegans for Open Gov't v. City of San Diego*, 242 Cal. App. 4th 416, 429 (2015) ("Even the literal meaning of the words may be disregarded to avoid absurd results.") (citation omitted).

Plaintiffs' broad reading would also render the law incompatible with the First

Amendment. If Section 1799.3 prohibited any disclosure of *either* personal information *or* records, it would impose a broad restriction on commercial speech without any connection to the specific government interest of protecting one's video rental history. *See, e.g.*, *NetChoice, LLC v. Bonta*, 2023 WL 6135551, at *10 (N.D. Cal. Sept. 18, 2023) (explaining that, to restrict nonmisleading and legal commercial speech, "it is the State's burden to show 'at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest,'" and enjoining California privacy law that failed this standard) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011)). The Court should avoid reading the statute in a way that would raise serious constitutional concerns. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932, 942 (9th Cir. 2006) (statute should be construed to avoid burdening First Amendment interests).

Accordingly, Plaintiffs do not state a viable Section 1799.3 claim because they plausibly allege only that MUBI disclosed which webpages they visited on MUBI's website, not that MUBI disclosed the "contents of any record, including sales or rental information," associated with them. Unlike the VPPA claim, Plaintiffs' Section 1799.3 claims rests on MUBI's use of the TikTok and X Pixels as well as the Meta Pixel. But as with the Meta Pixel, Plaintiffs allege that the TikTok and X Pixels send only URL browsing data without any indication of what the user did on the associated webpage—let alone that the user actually watched the video. FAC ¶¶ 54-58 & Figs. 6, 8. It follows that the Section 1799.3 claim should be dismissed.

### 2. Plaintiffs Provided "Written Consent" to the Disclosure of Their Information

Plaintiffs' Section 1799.3 claim also fails because Plaintiffs consented to disclosure of their information in accord with the statute. Plaintiffs allege that they are MUBI subscribers, and that all MUBI subscribers must agree to the Terms and Privacy Policy to use MUBI's services. FAC ¶¶ 63-64. The information that MUBI allegedly disclosed was collected only from account holders, meaning that, under their own allegations, Plaintiffs' information could have been collected and disclosed only *after* they agreed to MUBI's Terms. *E.g.*, *id.* ¶ 72 ("Once Plaintiff [] created an account, Defendant disclosed his PII to Meta."); *id.* ¶¶ 85, 97, 108, 119, 130, 141, 152, 163 (similar). The FAC reproduces screenshots and quotes the Terms, acknowledging that MUBI

explicitly discloses that it "shares consumer's PII 'with advertisers, ad servers, and ad networks (including but not limited to … Facebook Pixel …) to select and deliver advertising and content, and target and personalize advertising content both on our sites and on selected partner sites.'" *Id.* ¶ 66. As the FAC further alleges, MUBI provides specific explanations about how users can control these technologies and opt out of the data sharing about which they complain. *Id.* ¶ 68 (admitting the Privacy Policy describes "a consumer's ability to opt-out of the Meta Tracking Pixel collection"); *id.* ¶¶ 41-53 (complained-of disclosure depends upon cookie data being stored and transmitted via pixels). And Plaintiffs concede that clicking the Terms' hyperlinks led them "to separate webpages containing MUBI's full Terms of Service and Privacy Policy" (*id.* ¶ 65)—an admission that they in fact clicked the hyperlinks and visited the policies.

It follows that Plaintiffs do not actually claim that they were deprived of information regarding MUBI's use of analytics tools or of the ability to opt out of their use. Instead, Plaintiffs' only complaint is that their consent was not "properly obtained" in the precise technical format "required by the VPPA." *Id.* ¶¶ 59-60. But Section 1799.3's consent provision differs from the VPPA's, requiring only that the subject of the record provide "written consent" to disclosure, without imposing the specific formatting requirements found in the VPPA. Cal. Civ. Code § 1799.3(c). Accordingly, by agreeing to MUBI's Terms, Plaintiffs provided such consent.

While not challenging the content of MUBI's disclosures, Plaintiffs contend that their consent was insufficient because, in their view, the hyperlinks informing visitors of MUBI's Terms were inconspicuous. FAC ¶ 63. This contention is meritless. Contracts on websites are enforceable when a user clicks a button or continues using the site so long as: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests their assent to those terms. *See Oberstein v. Live Nation Entm't., Inc.*, 60 F.4th 505, 516-17 (9th Cir. 2023). The question whether a website provides reasonably conspicuous notice depends on whether a reasonably prudent user could see the notice given the webpage's design and content. *See id.* And settled law holds that a user manifests assent when advised that clicking a button or checking a box will constitute assent. *See Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062,

1073-74 (C.D. Cal. 2023) (citing cases holding that a button click accompanied by notice is effective assent).

Plaintiffs cite *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 854 (9th Cir. 2022), for the proposition that their consent was insufficient because the hyperlinks to MUBI's Terms are merely underlined and clickable, but not blue. FAC ¶¶ 63, 69. That allegation is false. The FAC itself reveals that MUBI's Terms *do* follow customary hyperlink design convention by having the text in a contrasting font color and conspicuously placed below the "Get Started" button. In the FAC, Plaintiffs excerpt the following screenshot from the sign-up flow on MUBI's homepage:




*Id*. Figs. 11, 18-20. But in addition, lower on the same page, with a white background, the "Terms of Service" and "Privacy" appear underlined and with blue hyperlinks:




Ex. B. This design choice (varying colors based on the background's color) helps ensure the links are conspicuous for all visitors in all contexts. Further, Plaintiffs' allegations show that MUBI provides another hyperlink to its Terms later in the sign-up process, which uses customary design elements of hyperlinks, like blue font:




FAC Fig. 12; *see Oberstein*, 60 F.4th at 516-17 (holding that terms were reasonably conspicuous under California law where they were "in bright blue font[,] distinguished from the rest of the text"

and presented more than once). In addition, Plaintiffs allege that the hyperlinks led them "to separate webpages containing MUBI's full Terms of Service and Privacy Policy," FAC ¶ 65, thereby conceding that they saw the links, clicked on them, and visited the pages. Because MUBI provided reasonably conspicuous notice of its Terms, Plaintiffs gave valid "written consent" to any disclosures of their information, which defeats their Section 1799.3 claim.

**3. Plaintiffs Fail to Allege that MUBI Is in the Business of Providing "Video Recording Sales or Rental Services"**

Another ground for dismissing the Section 1799.3 claim is that Plaintiffs fail to plausibly allege that MUBI is in the business of "providing video recording sales or rental services." Section 1799.3 does not define the term "sales or rental services," so its ordinary meaning controls. *See De Vries v. Regents of Univ. of California*, 6 Cal. App. 5th 574, 590-91 (2016) ("When a term goes undefined in a statute, we give the term its ordinary meaning.") (internal citations omitted). "Sale" means "the transfer of ownership of and title to property from one person to another for a price." *Sale*, Merriam-Webster, https://www.merriam-webster.com/dictionary/sale (last visited June 5, 2024). "Rent" means "to grant the possession and enjoyment of in exchange for rent." *Rent*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rent (last visited June 5, 2024).

Nowhere does the FAC allege that MUBI offers videos for sale or rent. Nor could they. As Plaintiffs allege, MUBI is a subscription service, FAC ¶ 37, which is separate and distinct from a sale or a rental service. *See Subscription*, Merriam-Webster, https://www.merriam-webster.com/dictionary/subscription (last visited June 5, 2024) ("an arrangement for providing, receiving, or making use of something of a continuing or periodic nature especially on a prepayment plan"). Section 1799.3 claim should be dismissed on this ground as well.

**4. Plaintiffs' Section 1799.3 Claim Fails as to the X and TikTok Pixels Because They Do Not Allege Transmission of Identifiable Information**

In addition to failing to allege that MUBI disclosed data about specific video materials that they rented or purchased, Plaintiffs also do not allege that MUBI transmitted any information via the TikTok or X Pixels that could personally identify them. As noted above in Part IV.B.1, Section 1799.3 applies only if the defendant discloses video history that is linked to a particular individual.

If Section 1799.3 were read to govern information about video rentals or sales without tying that information to a particular person, there would be no privacy interest at stake, and online video rental platforms would be precluded from utilizing basic analytics tools or releasing aggregated statistics about viewer engagement. The California legislature did not intend such a result, and the Court should not interpret the law in a way that would create such absurd results.

Plaintiffs do not even attempt to allege that MUBI transmitted their video history records to X or TikTok Pixels—indeed, that is why they did not include X or TikTok as part of their VPPA claim. *See* FAC ¶ 56 (alleging TikTok Pixel sends URLs, a time stamp, and a load time of the page); *id.* ¶ 58 (alleging Twitter Pixel sends URLs). Accordingly, if the Section 1799.3 claim is not dismissed in its entirety, the Court should dismiss it as to the non-Meta pixels. *See Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1025-26 (N.D. Cal. 2023) ("A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.") (internal quotation marks omitted).

**C. Plaintiffs' CIPA Claim Should Be Dismissed**

CIPA is an anti-wiretapping and anti-eavesdropping statute imposing liability on those who "willfully and without the consent of all parties to the communication … read, or attempt to read, or to learn the contents or meaning of any … communication while the same is in transit." Cal. Penal Code § 631(a). As the FAC implicitly concedes (FAC ¶ 206), the intended recipient of a communication (here, MUBI) cannot be directly liable for wiretapping under CIPA. *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) ("[A] party to the communication is exempt from liability under CIPA.").[4] Instead, Plaintiffs' theory is that MUBI "aided" and "conspired" with Meta to engage in wiretapping in violation of Section 631(a). FAC ¶¶ 206-08. Plaintiffs' CIPA claim fails because they consented to the disclosure of their information, and they otherwise do not allege the basic elements of a wiretap claim.

---

[4] The alleged "communications" are "text and phrases" entered on MUBI's site "to request and view specific video content and titles" and PageView events captured by Meta Pixel. FAC ¶ 205.

**1. Plaintiffs Explicitly Consented to the Disclosure of Their Information**

Plaintiffs' CIPA claim fails at the threshold because they do not plausibly allege that any of their communications were accessed "without their consent." Cal. Penal Code § 631(a). Section 631(a) applies only to an "unauthorized" interception made "without the consent of all parties to the communication." *Id.*; *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954, 956 (N.D. Cal. 2017) (dismissing CIPA claim because plaintiffs' consent to policies disclosing the "precise conduct at issue" "bar[red]" their claims and "[n]o further allegations could allow [them] to bring claims arising out of conduct which they consented to") (citation omitted), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). "Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint" and may be challenged on a motion to dismiss. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (dismissing CIPA § 637.6 claim).

As detailed in Part IV.B.2, MUBI provided conspicuous notice of its Terms and Privacy Policy, and Plaintiffs unambiguously agreed to them during the account registration process. The Terms disclosed (and Plaintiffs assented to) the "precise conduct" underlying their CIPA claim: that MUBI "shares" user information "with advertisers, ad servers, and ad networks (including … Facebook Pixel …) to select and deliver advertising and content, and target and personalize advertising and content." FAC ¶ 66 (citing MUBI's Privacy Policy). By completing registration, Plaintiffs consented to the disclosure of their "communications" with MUBI's website and pixels, which defeats their Section 631(a) claim. *See Garcia*, 78 F. Supp. 3d at 1136 (sign-up flow requiring users to agree to terms "contradict[ed] Plaintiff's claim that he was unaware of and did not consent to the transfer of his personal information"); *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 998 (W.D. Wash. 2022) (user's consent barred claim under Washington wiretap law where, "[t]hrough its registration process, Amazon announced that if the user chose to activate the Alexa device, it would record any conversation the device thought was directed at it").

Plaintiffs' allegation that disclosure of their communications was made "without proper consent" cannot change the result. FAC ¶ 206. A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013); *Garcia*, 78 F. Supp. 3d at 1136 (rejecting "merely

conclusory" CIPA allegations). Because the materials attached to and quoted in the FAC show that Plaintiffs indisputably consented to MUBI's Terms, the CIPA claim must be dismissed.

**2. Plaintiffs Fail to Satisfy Additional Elements of the CIPA Claim**

Even if Plaintiffs could demonstrate lack of consent, they fail to plead other fundamental elements of their wiretap claim.

***Contents.*** Plaintiffs do not allege the collection of the "contents" of any communication. Under CIPA, the term "contents" means "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). It does not include "record information regarding the characteristics of the message," such as subscriber numbers, IP addresses, user locations, duration of a users' visits, or browser type. *Id.* at 1107. Thus, Plaintiffs' allegations that MUBI fostered the collection of information like webpage "load time," timestamps, Facebook IDs, and non-URL information from the Meta Pixel's HTTP Headers cannot establish liability under CIPA. *See* FAC ¶¶ 8, 36, 47, 56.

Plaintiffs attempt to skirt this flaw in two ways. First, the FAC asserts that the "text and phrases" entered into MUBI's "search bar" were disclosed through the Meta Pixel. *Id.* ¶¶ 204-05. This assertion contradicts Plaintiffs' own allegations about how the Pixel works, which make clear that MUBI configured the Pixel to disclose only certain PageView events associated with webpages that a user visited, but never "search bar" information the user entered.[5] *Id.* Figs. 2, 4; *cf. id.* ¶¶ 35, 39 (explaining that advertisers configure Pixel by choosing from a "menu of 'standard events,'" and that MUBI configured Pixel to share PageView events and parameters).

Second, Plaintiffs point to the PageView events themselves, and particularly the disclosure

---

[5] Likewise, the cookies allegedly disclosed here (c_user and fr), FAC ¶¶ 41-42, 47, do not (and cannot) reveal MUBI visitors' "search bar" content. Per the FAC, these "identifiers" reveal only visitors' Facebook IDs and encrypted browser identifiers. *Id.* ¶¶ 41, 44. The information appears as facially unidentifiable numerical strings that reveal nothing unless one enters the Facebook ID into a web browser, *id.* ¶ 42, or until Meta "combine[s] the identifiers with the event data," *id.* ¶ 49. And even then, the data does not reveal any searches.

of the URLs of webpages that a user visited on MUBI. *Id.* ¶¶ 39-40. But collected URLs that "only reveal a general webpage address and basic identification information" are merely non-content record information. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) (dismissing CIPA claim because URLs at issue were general webpages and thus did not constitute contents). Here, Plaintiffs' allegations make clear that the URL data would show at most that a user visited a specific webpage, without reflecting the user's form field submissions or other actions they took on the site. When a webpage relates to a specific film title, the FAC acknowledges that the URL contains nothing more than MUBI's domain and the movie's title. *See* FAC ¶ 40 ("[I]f a consumer picks the movie Rosie Plays Julie, the PageView event discloses to Meta the URL of the page: https://mubi.com/en/us/films/rosie-plays-julie"). Thus, Meta is alleged to receive "basic identification and address information" only about the webpages visited by each user, *see* FAC ¶¶ 39-40, and not any "specific information … that a user inputs" on MUBI's website. *Hammerling*, 615 F. Supp. 3d at 1089, 1093. And without the inclusion of "user-generated material," the URLs cannot amount to protected "contents" of communications. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1077, 1081-82 (C.D. Cal. 2021) (collecting cases in holding CIPA "protects only the internal, user-generated material of a message, not routine identifiers," and concluding that page views on defendant's website did not "constitute[] message content"); *compare In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (disclosure of URL information may constitute communication "contents" under CIPA where the address contains specific user search engine queries that "could divulge a user's personal interests, queries, and habits on third-party websites operating outside of [the defendant's] platform").

***In Transit.*** Plaintiffs also fail to allege that that their communications were intercepted while "in transit." To state a wiretap claim, a plaintiff must allege communications captured *simultaneously* with their transmission. *See Valenzuela v. Super Bright LEDs, Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023). This requires, at a minimum, "factual allegations regarding the method, or nature, of interception" that occurred. *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 1626114, at *9 (C.D. Cal. Apr. 2, 2024).

The FAC does not allege anything regarding the timing or nature of the alleged "interception" of any communications that could give rise to a reasonable inference that any such interception occurred while the communication was in transit. Instead, Plaintiffs offer a handful of conclusory allegations that merely recite the bare elements of CIPA. *See* FAC ¶¶ 36, 205 (alleging communications were "intercepted and received by Unauthorized Third Parties" and that Pixel "automatically collect[s]" information). Time and again, courts find these types of generic allegations insufficient to state a Section 631(a) claim. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (rejecting allegations that did "little more than restate the pleading requirement of real time interception"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting [] data in transit."); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'"); *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023) (dismissing CIPA claim where plaintiff did "not indicate when the interception occur[red]"). As the court explained in *Valenzuela*, requiring a plaintiff to plead a contemporaneous "interception" is "not unreasonable," particularly where (as here) Plaintiffs include detailed allegations about the Pixel and what Meta can allegedly do with user information it obtains. *See* 674 F. Supp. 3d at 758 (dismissing CIPA claim for failure to plead an "interception" where plaintiffs "provide[d] a great deal of information about how Meta uses the data the third party obtains" but "no detail as to how the interception occurs").

Where Plaintiffs' allegations are not conclusory, they are contradictory. The FAC notes that CIPA's "objective" is to prevent a participant to a communication from "permit[ting] an outsider to monitor the communication." FAC ¶ 201. Yet Plaintiffs' allegations do not depict an "outsider" being invited in to "monitor" communications that are in transit. Plaintiffs allege that *MUBI*, rather than Meta, "collect[s] [Plaintiffs] information through tracking pixels," *id.* ¶ 50, and then *sometime later* "transmit[s]," "shares," or "discloses" information with Meta, *id.* ¶¶ 8, 9, 51. In other instances, Plaintiffs allege that the Pixel is what "sends [] record[s] to Facebook." *Id.*

¶¶ 34-36, 38; *see also* ¶ 4. And at least one allegation removes the Pixel from the equation entirely, alleging that MUBI "transmits one copy of its digital subscribers' viewing information directly from its web server to Meta's web servers." *Id.* ¶ 7 n.2. Plaintiffs' inconsistent allegations are all the more reason why their CIPA claim fails. *See Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 6393503, at *5 (N.D. Cal. Oct. 28, 2016) ("Courts may dismiss a claim as not plausible where its supporting factual allegations are contradictory.").

**D. Plaintiffs Do Not Adequately Plead a UCL Claim**

Plaintiffs lack statutory standing to support a UCL claim, and their claim for equitable relief is barred because they have an adequate remedy at law. Even if Plaintiffs could clear these hurdles, they do not allege any "unfair" or "unlawful" conduct that could support a UCL claim.

**1. Plaintiffs Lack Statutory Standing to Pursue a UCL Claim**

To plead statutory standing, a UCL plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact; and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (internal quotation marks omitted). Here, Plaintiffs contend that they suffered an "economic injury" because they paid more for their MUBI subscriptions than they otherwise "would have been willing to pay had they been aware" of MUBI's data practices. FAC ¶ 223.

This allegation is wholly implausible, as Plaintiffs do not (and cannot) dispute that MUBI disclosed the use of the analytics tools at issue, told all users how to disable them, and specifically required subscribers like Plaintiffs to certify that they read and agreed to MUBI's terms. Plaintiffs attempt to plead around this flaw by claiming that they "would have been aware" of MUBI's practices only if "Defendant obtained Plaintiffs' consent to disclose their PII—in the distinct and separate form as required by the VPPA." *Id.* ¶ 220. But whether MUBI's consent flow complied with the VPPA's formatting requirements has no bearing on whether Plaintiffs were *actually unaware* of MUBI's disclosure practices, leading them to pay more for their subscriptions. This implausible theory of "economic harm" cannot be squared with what the FAC alleges, and what the incorporated materials show, about the registration and consent flow.

In any event, because Plaintiffs' only theory of economic harm is "premised on a cognizable violation of the VPPA," which they do not establish, their UCL claims hinging on that theory should also be dismissed. *Markels v. AARP*, 2023 WL 6411720, at *4 (N.D. Cal. Aug. 29, 2023) (dismissing UCL claim premised on inadequately pleaded VPPA violation). To the extent Plaintiffs contend that their UCL claim rests on other conduct (*i.e.*, violations of Section 1799.3 and CIPA, FAC ¶¶ 215, 218), they do not allege any economic loss caused by those violations. Plaintiffs thus lack statutory standing to pursue their UCL claims, warranting their dismissal.

**2. Plaintiffs Do Not Plead an Inadequate Remedy at Law**

Plaintiffs' UCL claim is separately subject to dismissal because they do not plead that they lack an adequate remedy at law. The remedies available under the UCL are entirely equitable. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011). "Equitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). Under these principles, the Ninth Circuit has held that, even at the pleading stage, a plaintiff "must establish that []he lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313-15 (9th Cir. 2022) (holding "district court lacked equitable jurisdiction to hear" UCL claim given that plaintiff had "an adequate legal remedy"); *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1157 (N.D. Cal. 2021) (Davila, J.) (a "party must sufficiently allege a lack of legal remedy in order to survive a motion to dismiss").

Here, Plaintiffs seek "monetary damages" for their other claims (under the VPPA, Section 1799.3, and CIPA) that are based on the *same conduct* underlying their UCL claim, without alleging (much less *plausibly*) that they lack an adequate remedy at law. It follows that the UCL claim should be dismissed. *See, e.g.*, *Brickfire LLC v. Aetna Life Ins. Co*., 2024 WL 1121007, at *6 (C.D. Cal. Feb. 16, 2024) (dismissing UCL claim under *Sonner*); *Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *3-4 (N.D. Cal. Mar. 29, 2022) (Davila, J.) (same).

**3. Plaintiffs Do Not State a Claim Under Any UCL Prong**

Plaintiffs' UCL claim also fails on the merits because they cannot satisfy any of the requirements for pleading unlawful or unfair conduct (and do not plead fraudulent conduct).

***No "Unlawful" Conduct.*** UCL unlawful prong claims depend upon a violation of a predicate statute. Plaintiffs' claim under the unlawful prong therefore fails because their predicate claims—for violations of the VPPA, Section 1799.3, and CIPA—fail. FAC ¶ 218; *see Hammerling*, 615 F. Supp. 3d at 1094 ("If the predicate claims fail, the UCL claim also fails"); *Cal. Crane Sch., Inc. v. Google LLC*, 2024 WL 1221964, at *9 (N.D. Cal. Mar. 21, 2024) (dismissing claim because plaintiff failed to adequately plead claims under underlying statutes).

***No "Unfair" Conduct.*** Plaintiffs do not adequately plead "unfair" conduct under any test used by the courts, which require the challenged conduct to (i) be "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," (ii) be "tethered to specific constitutional, statutory, or regulatory provisions," or (iii) cause an "impact on the victim [that] outweighs the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215-16 (9th Cir. 2020) (citations omitted). Plaintiffs do not even attempt to plead that MUBI violated any specific "constitutional or statutory provision or a regulation." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999). Nor do they allege *any* impact (much less a negative impact) caused by MUBI's disclosure practices. And while Plaintiffs label in a conclusory manner MUBI's conduct as "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," FAC ¶ 215, none of their allegations back up that claim. Plaintiffs claim that MUBI's actions were unfair because their information was disclosed to "Unauthorized Third Parties, including at least, Meta, without consent." *Id.* ¶ 214. But MUBI's Terms expressly stated that it shared subscribers' information with third parties, *including* Meta. *Id.* ¶¶ 64-66 & Figs. 13-15. Where a defendant's terms and conditions "warned" of the activity plaintiffs complain about, plaintiffs cannot claim that a defendant's actions were "against public policy, immoral, unethical, oppressive, or unscrupulous." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012); *see also Nikoopour v. Ocwen Loan Servicing, LLC*, 2018 WL 3007918, at *6 (S.D. Cal. June 14, 2018) (UCL unfair prong claim defeated by parties' agreement).

Here, Plaintiffs had multiple opportunities to review the Terms *before* creating their MUBI accounts and agreeing to the disclosure practices at issue. If, despite indicating otherwise during registration, Plaintiffs "failed to read the terms and conditions before agreeing to them," "any harm

[they] suffered was the product of [their] own behavior," *not* the fault of MUBI. *Davis*, 691 F.3d at 1170 (dismissing UCL unfairness claim against supposedly hidden fees, where ads warned "other restrictions might apply," the application process disclosed the fees, and plaintiff "had the opportunity to cancel"); *see also Schramm v. JPMorgan Chase Bank, N.A.*, 2014 WL 12633527, at *13 (C.D. Cal. July 10, 2014) (similar). The UCL unfair prong claim should be dismissed.

**E. Plaintiffs Lack Article III Standing to Seek Injunctive Relief**

Plaintiffs cannot pursue injunctive relief because they fail to plausibly allege that an imminent future harm. *See* FAC ¶¶ 188, 197, 224. A plaintiff must demonstrate Article III standing for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185, (2000). Article III standing for injunctive relief requires a threat of "actual and imminent, not conjectural or hypothetical" injury, *Summers v. Earth Is. Inst.*, 555 U.S. 488, 493 (2009), meaning the "threatened injury must be certainly impending" and "allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (quotation and alteration omitted).

Plaintiffs do not satisfy that standard. All of Plaintiffs' alleged harms involve their use of MUBI in the *past*. *See, e.g.*, FAC ¶ 81 (allegation repeated for each Plaintiff). Because "Plaintiffs have not alleged that any of the Plaintiffs are currently" using MUBI to watch movies "or that any of them intend to do so in the future," they do not allege a certainly impending future injury. *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1248 (N.D. Cal. 2017); *see also Trammell v. KLN Enters., Inc.*, 2024 WL 1722243, at *5 (S.D. Cal. Apr. 22, 2024) (similar); *Caldwell v. Nordic Nats., Inc.*, 2024 WL 24325, at *13 (N.D. Cal. Jan. 2, 2024) (similar); *Hamm*, 2022 WL 913192, at *3-4 (no standing to seek injunctive relief where plaintiff "has not alleged facts to show he is threatened by repetition of" the alleged unlawful conduct). Moreover, even if Plaintiffs intend to use MUBI again, they now know (even if they did not before) that MUBI's Terms disclose whether their information will be shared with third parties. This likewise defeats any claim for injunctive relief. *See Trammell,* 2024 WL 1722243, at *5 (no injunctive relief standing where plaintiff "now has knowledge that enables him to make an appropriate choice" about future purchases).

## V. CONCLUSION

MUBI respectfully requests that the Court dismiss the FAC in its entirety.

DATED: June 5, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Michael H. Rubin*

Michael H. Rubin (CA Bar No. 214636)
*michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Gary Feinerman (admitted *pro hac vice*)
*gary.feinerman@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone +1.312.876.7700

*Attorneys for Defendant MUBI, Inc.*