**BURSOR & FISHER LLP**
Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
sbogdanovich@bursor.com

Attorneys for Plaintiffs & the Proposed Class
[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SAMUEL EDWARDS, MICHELLE BROWN, DENNIS DEPEW, CINTHIA DAVIS MARITZA HERNANDEZ, SIOSIUA MAFOA, JOHN DOE, AALANY MCMAHAN, and DEBJANI SARKAR, *individually and on behalf of all others similarly situated,*

Plaintiff,

v.

MUBI, INC.,

Defendant.

Case No. 5:24-cv-00638-EJD

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: October 10, 2024
Time: 9:00 A.M.
Court: Courtroom 4, 5th Floor
Hon. Edward J. Davila

## TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION AND BACKGROUND .......... 1

II. STANDARD OF REVIEW .......... 4

III. ARGUMENT .......... 5

A. Plaintiffs' VPPA Claim is Sufficiently Pled .......... 5

1. Plaintiffs Allege Traditional Concrete Harm Giving Rise to Article III Standing to Pursue their VPPA Claim. .......... 5

2. MUBI's Inconspicuous Privacy Policy Does Not Satisfy the VPPA's Statutory Consent Requirement. .......... 6

3. Plaintiffs Sufficiently Allege that MUBI Disclosed the Videos that they Requested or Obtained. .......... 7

B. Plaintiffs Adequately Allege MUBI Violated California Civil Code § 1799.3. .......... 10

1. MUBI Disclosed Information That Collectively Identifies Users *and* The Videos They Accessed. .......... 10

2. MUBI's Interpretation of California Civil Code § 1799.3 is Incorrect. .......... 11

3. Plaintiffs Did Not Provide Valid Written Consent to The Disclosure of Their Information. .......... 12

4. MUBI Provides Video Recording Sales or Rental Services .......... 15

5. Plaintiffs Plausibly Allege Transmission of Identifiable Information Via the X and TikTok Pixels. .......... 17

C. MUBI's Video Privacy Violations are Actionable under the UCL. .......... 17

D. Plaintiffs' Have Standing to Enjoin MUBI's Unconsented Privacy Violations .......... 18

IV. CONCLUSION .......... 19

## TABLE OF AUTHORITIES


**PAGE(S)**

**CASES**

*Ade v. Viki, Inc.*, 2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) .......... 3, 17

*Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154 (W.D. Wash. 2010) .......... 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .......... 12, 14, 15, 18

*Brooks v. IT Works Mktg., Inc.*, 2022 WL 2079747 (E.D. Cal. June 9, 2022) .......... 12

*Brown v. Google LLC,* 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 18

*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015 (N.D. Cal. 2019) .......... 3, 18

*Cappello v. Walmart Inc.*, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) .......... 7

*Cnty. of Monterey v. Blue Cross of Cal.*, 2019 WL 343419 (N.D. Cal. Jan. 28, 2019) .......... 4

*Collins v. Pearson Educ., Inc.*, 2024 WL 895316 (S.D.N.Y. Mar. 1, 2024) .......... 3, 5, 9

*D'Angelo v. FCA US, LLC*, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) .......... 19

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .......... 5, 6

*Fan v. NBA Properties Inc.*, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... passim

*Feldman v. Star Trib. Media Co. LLC,* 659 F. Supp. 3d 1006 (D. Minn. 2023) .......... 5, 8

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ........................................................................ 11, 16

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ............................................................................. 8

*Hall v. Smosh Dot Com, Inc.*,
72 F.4th 983 (9th Cir. 2023) ........................................................................................ 2, 6

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) ....................................................................... 9, 11

*Heresniak v. Musk*,
2023 WL 3605978 (N.D. Cal. May 22, 2023) ................................................................ 4

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................ 5, 6

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................................................. 14

*In re Hulu Priv. Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ............................................................. 16

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019) ........................................................................................ 4

*In re Stubhub Refund Litig.*,
2023 WL 5092759 (9th Cir. Aug. 9, 2023) ................................................................... 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................................................................... 17

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) ................................................................ 3

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) .......................................................................... 9

*Lopez v. Dave Inc.*,
2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) ............................................................ 13

*Lozano v. AT & T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007) ....................................................................................... 18

*M. K. v. Google LLC*,
2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) .................................................................. 3

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........ 4

*Martin v. Meredith Corporation*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) ........ 7, 8, 9

*May v. Philo, Inc.*,
2023 WL 4410505 (N.D. Cal. July 7, 2023) ........ 5

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 4

*Salazar v. Paramount Glob.*,
683 F. Supp. 3d 727 (M.D. Tenn. 2023) ........ 5

*Sellers v. Bleacher Rep., Inc.*,
2023 WL 4850180 (N.D. Cal. July 28, 2023) ........ 3, 8, 9, 11

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ........ 15

*Soman v. Alameda Health System*,
2023 WL 336632 (N.D. Cal. Jan. 20, 2023) ........ 6

*Stanley v. Georgia*,
394 U.S. 557 (1969) ........ 5, 6

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ........ 2, 16

*Stark v. Patreon, Inc.*,
656 F. Supp. 3d 1018 (N.D. Cal. 2023) ........ 7

*Stephens v. I.C. System, Inc.*,
2023 WL 4316788 (C.D. Cal. Apr. 6, 2023) ........ 6

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ........ 2, 5

*Williams v. DDR Media, LLC*,
2023 WL 2314868 ........ 12

**STATUTES**

18 U.S.C. § 2710 ........ passim

Cal. Civ. Code § 1799 ........ passim

Cal. Penal Code § 631 ........ 4

**RULES**

Fed. R. Civ. P. 8(a) .......... 4

**OTHER AUTHORITIES**

S. Rep. No. 112-258 .......... 7
S. Rep. No. 100-599 .......... 5

## I. INTRODUCTION AND BACKGROUND

This case presents straightforward privacy claims for violations of the Video Privacy Protection Act ("VPPA") and several California statutes because Defendant MUBI, Inc. ("Defendant" or "MUBI") installed unauthorized tracking code on its website, www.mubi.com (the "Website") without informed written consent. Specifically, MUBI, an online "global streaming service, production company and film distributor," installed "tracking pixels" which secretly and surreptitiously sent MUBI's customers' video viewing histories to various third parties including, at least, Meta Platforms, Inc. ("Meta" or "Facebook"), TikTok, Inc. ("TikTok"), Google Analytics and X Corp., formerly known as Twitter ("X") (collectively, "Unauthorized Third Parties"). *See* ECF No. 25, First Amended Complaint ("FAC"), ¶ 1.

Among other things, the pixels that MUBI installed and configured on its Website transmit the titles of videos that subscribers request or obtain together with numerical identifiers that can be used to specifically identify each MUBI subscriber. As an example, the Facebook Pixel transmits both the video content requested by a MUBI subscriber and that subscriber's "Facebook ID," a number that allows anyone with the number (which is transmitted in an unencrypted format) to identify that subscriber's Facebook profile. *See, e.g.*, FAC, ¶¶ 41-42.[1] While Defendant attempts to characterize Plaintiffs' case as "manufactured," in a similar case alleging the use of "pixel" technology to share internet browsing data, Judge Orrick recently commented that "a reasonable Facebook user" would be "shocked" to realize such conduct took place. *Compare* ECF No. 29 ("MTD") at 1, *with Doe v. Meta Platforms, Inc.*, No. 3:22-cv-03580, ECF No. 141, at *20 (N.D. Cal.).[2] The same scenario exists here. Users of www.mubi.com understandably do not expect that

---

[1] Typing www.facebook.com/[FacebookID] into a web browser will display the corresponding user's Facebook profile page. For instance, www.facebook.com/4 will load the Facebook profile of Mark Zuckerberg because his Facebook ID is 4. If one types www.facebook.com/[FacebookID] into a web browser, it will load that individual's Facebook profile page (which contains a host of information about that particular individual).

[2] *See also* Facebook *Health Tracking Claim Shocking If True, Judge Says*, LAW360 (Nov. 9, 2022), available at https://www.law360.com/articles/1548383/facebook-health-tracking-claim-shocking-if-truejudge-says (last visited July 8, 2024).

their personal information is being harvested and shared with social media and advertising giants like the Unauthorized Third Parties.

MUBI challenges Plaintiffs Article III standing to bring their VPPA claims based on (1) Defendant's disclosure of private video-consumption information coupled with (2) the absence of the stand-alone consent required by the VPPA and Plaintiffs' resulting injuries readily demonstrate the harm they suffered. The Supreme Court rejected MUBI's first argument; the Ninth Circuit rejected the second. The Supreme Court in *TransUnion LLC v. Ramirez* held that the "disclosure of private information" is a concrete intangible harm, and as such, "the 1,853 class members whose reports were disseminated to third parties suffered a concrete injury in fact under Article III." 594 U.S. 413, 433 (2021). In other words, the disclosure of one's private (and potentially embarrassing) video-consumption history to tech company busybodies distinguishes this case from the one where "someone wrote a defamatory letter and then stored it in her desk drawer." *Id*. at 434. Worse yet, Defendant's second argument is not a standing argument *at all*. "Whether … [a plaintiff's] consent would be legally sufficient under the [a federal privacy statute] [is] relevant only to the merits of [plaintiff]'s claim, not to her standing to litigate it." *Hall v. Smosh Dot Com, Inc*., 72 F.4th 983, 991 (9th Cir. 2023). Lack of consent is not a "bare procedural violation"; it is the essential legal element that distinguishes a leisurely stroll from a trespass or a teammate's celebratory push from a battery. Under the VPPA, any purported "consent must meet strict requirements, including being 'in a form distinct and separate from any'" other. *Stark v. Patreon, Inc*., 635 F. Supp. 3d 841, 850 (N.D. Cal. 2022) (quoting 18 U.S.C. § 2710(b)(2)(B)). Because MUBI cannot show consent on the *merits*, it recasts the argument as a challenge to *standing*. This is plainly improper.

Defendant's pleading challenge fares no better. In order to state a claim under the VPPA, Plaintiffs must allege that a video tape service provider knowingly disclosed, to any person, personally identifiable information concerning any consumer of such provider. *Patreon*, *supra*, 635 F. Supp. 3d at 853. Here, Plaintiffs plausibly plead the following:

- Plaintiffs were subscribers to www.mubi.com and, during that time, were also Facebook users. *See* FAC, ¶¶ 11-19.

- Whenever Plaintiffs requested, obtained, or watched a video on www.mubi.com, MUBI transmitted to the Unauthorized Third Parties, via the Unauthorized Third Parties' pixels the video content titles and Plaintiffs' application specific identifiers. *See, e.g.*, *id.*, ¶¶ 30-53 (Facebook Pixel) & 54-58 (other tracking pixels).

- MUBI is a "video tape service provider." *Id.*, ¶ 181.

- MUBI "knowingly disclosed" Plaintiffs' "personally identifiable information" ("PII") and "personal information" ("PI") by installing the pixels of the Unauthorized Third Parties on www.mubi.com and allowing the Unauthorized Third Parties, via their corresponding pixels to capture and share Plaintiffs' PI and PII with third parties. *See, e.g.*, *id.*, ¶¶ 4-6, 52, 59-60, 72, 85, 97, 108, 119, 134, 141. 152, 163, 183, 185, 195-196 & 219-220.

Courts in this District have routinely held such allegations plausibly state a VPPA claim.[3] At this point, given the proliferation of VPPA litigation, many of Defendant's arguments are "foreclosed by precedent." *Collins v. Pearson Educ., Inc.*, 2024 WL 895316, at *7 (S.D.N.Y. Mar. 1, 2024). Here, MUBI, through its unlawful conduct, violated the VPPA by disclosing information capable of identifying its subscribers and the video materials they request or obtain without their informed, written consent, set forth separate and apart from all other legal obligations. *See id.* ¶¶ 178-188. Plaintiffs' allegations, described above, also adequately allege violations of the VPPA's California corollary, California Civil Code § 1799.3. As another court in this District held, the disclosure of private video consumption information violates the UCL because it flouts "United States' and California's policy for protecting the privacy of video media purchasers."*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1024 (N.D. Cal. 2019). Try as it might, nothing in MUBI's motion to dismiss alters the well-pleaded nature of Plaintiffs' First Amended Complaint. As such, MUBI's motion should largely be denied.[4]

---

[3] *See, e.g.*, *Ade v. Viki, Inc.*, No. 23-CV-02161-RFL, 2024 WL 1880153, at *4 (N.D. Cal. Mar. 28, 2024) (denying motion to dismiss VPPA claim); *Fan v. NBA Properties Inc.*, No. 23-CV-05069-SI, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (similar); *M. K. v. Google LLC*, No. 21-CV-08465-VKD, 2023 WL 4937287, at *6 (N.D. Cal. Aug. 1, 2023) (similar); *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *5 (N.D. Cal. July 28, 2023); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023).

[4] Plaintiffs do not oppose MUBI's request to dismiss plaintiff's California Invasion of Privacy Act

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) challenging whether the facts as pleaded establish Article III standing is considered a facial standing challenge. *See, e.g.*, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (stating that a facial attack is an argument that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction"). In reviewing a facial standing challenge, the court "accept[s] the jurisdictional allegations in the complaint as true." *Heresniak v. Musk*, No. 22-CV-03074-CRB, 2023 WL 3605978, at *2 (N.D. Cal. May 22, 2023).

Federal Rule 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating a challenge to the sufficiency of the pleading under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the [Plaintiff]." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts are limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters *properly* subject to judicial notice." *Cnty. of Monterey v. Blue Cross of Cal.*, No. 17-CV-04260-LHK, 2019 WL 343419, at *4 (N.D. Cal. Jan. 28, 2019) (emphasis added). Plaintiffs are afforded the "full benefit of their proof without tightly compartmentalizing the various factual components[.]" *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1152 (9th Cir. 2019).

---

claim under California Penal Code § 631.

## III. ARGUMENT

### A. Plaintiffs' VPPA Claim is Sufficiently Pled.

#### 1. Plaintiffs Allege Traditional Concrete Harm Giving Rise to Article III Standing to Pursue their VPPA Claim.

Defendant first argues that Plaintiffs lack Article III standing because they have not alleged a "concrete" injury—a "harm with a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." MTD at 7 (citing *TransUnion*, 594 U.S. at 440). TransUnion held that "disclosure of private information" is precisely one such harm. 594 U.S. 413, 433 (2021); *see also id.* at 442 (explaining that "[t]he 1,853 class members whose credit reports were provided to third-party businesses suffered a concrete harm and thus have standing"). Indeed, the Supreme Court previously held that "inquiry into the contents of [a person's] library" is a "<u>drastic invasion of personal liberties</u>," because others have "no business telling a man, sitting alone in his own house, what … films he may watch." *Stanley v. Georgia*, 394 U.S. 557, 565 (1969) (emphasis added). *See also* FAC, ¶¶ 24-26 (noting that Congress chose to protect video privacy because one's choice of video content implicates First Amendment rights, including "the ability of people to express their opinions, to join in association with others and to enjoy the freedom and independence that the Constitution was established to safeguard") (quoting S. Rep. No. 100-599, at 5-6 (statement of Sen. Leahy)).

As such, both before and after *TransUnion*, courts in the Ninth Circuit have consistently held that "every 18 U.S.C. § 2710(b)(1) violation present[s] the precise harm and infringe[s] the same privacy interests Congress sought to protect by enacting the VPPA." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017) (quotation marks & citations omitted); *accord In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 785 (N.D. Cal. 2019); *May v. Philo, Inc.*, No. 23-CV-01394-MMC, 2023 WL 4410505, at *1 (N.D. Cal. July 7, 2023) ("A plaintiff has standing to assert a violation of the VPPA 'without showing consequential harm.'"). Courts from other circuits have reached the same conclusion. *See, e.g.*, *Collins v. Pearson Educ., Inc.*, 2024 WL 895316, at *3 (S.D.N.Y. Mar. 1, 2024) (collecting cases); *Salazar v. Paramount Glob.*, 683 F. Supp. 3d 727, 739 (M.D. Tenn. 2023); *Feldman v. Star Trib. Media*

*Co. LLC*, 659 F. Supp. 3d 1006, 1016 (D. Minn. 2023). MUBI does not cite—nor are plaintiffs' counsel aware of—a single case to the contrary.[5]

### 2. MUBI's Inconspicuous Privacy Policy Does Not Satisfy the VPPA's Statutory Consent Requirement.

In attacking Plaintiffs' Article III standing, MUBI also takes issue with the VPPA's legal requirement that any consent to its disclosure of personal video history must be given "in a ***form distinct and separate*** from any form setting forth other legal or financial obligations." FAC, ¶¶ 60 & 67 (citing 18 U.S.C. § 2710(b)(2)(B)(i)). This readily fails because "[w]hether … [a plaintiff's] consent would be legally sufficient under the [federal privacy statute] [is] relevant only to the merits of [plaintiff]'s claim, not to her standing to litigate it." *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 991 (9th Cir. 2023).

The existence of valid consent is a quintessential merits question. Consent is an essential element in countless common law torts like trespass, battery, intrusion upon seclusion, public disclosure of private facts, and misappropriate of name or likeness—just to name a few. Valid consent changes a trespass into a leisurely stroll, a battery into a celebratory pat on the back, or, as is the case here, a "drastic invasion of personal liberties," *Stanley*, 394 U.S. at 565, into authorization to use ones' video consumption history to make targeted advertisements. Without such consent, however, MUBI conduct amounts to an *un*authorized disclosure. And "every unauthorized disclosure 'aggrieves' a consumer," sufficient to confer standing. *Eichenberger*, 876 F.3d at 983 (9th Cir. 2017).

Turning to the merits, Defendant's consent argument is meritless. "For the claim under the federal Video Privacy Protection Act, consent is governed by the terms of the statute itself." *In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 767, 790 (N.D. Cal. 2019). The VPPA expressly says any "informed written consent" sought must be "in a *form distinct and*

[5] All the cases MUBI relies on are readily distinguishable because they involve violations of different legal statutes imposing different kinds of legal obligations. *See Stephens v. I.C. System, Inc.*, 2023 WL 4316788, at *5 (C.D. Cal. Apr. 6, 2023) (no standing for FRCA violation); *Soman v. Alameda Health System*, 2023 WL 336632, at *2 (N.D. Cal. Jan. 20, 2023) (no standing for FRCA violation).

*separate* from any form setting forth other legal or financial obligations." 18 U.S.C. § 2710(b)(2)(B).

"[T]he 'distinct and separate' requirement means that there must be a 'separate stand-alone consent form' 'dedicated *solely* to informing consumers of [the defendant's] intent to share their personally identifiable information with Facebook'" and others." *Fan v. NBA Properties Inc.*, No. 23-CV-05069-SI, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) (*quoting Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019)) (emphasis in original); *Patreon*, *supra*, 656 F. Supp. 3d at 1026. Simply put, "the plain language of the VPPA does indeed require video tape service providers to … obtain the act of consent separately from the consumer's agreement to the retailer's… general privacy policy." *Walmart*, 2019 WL 11687705, at *2. MUBI plainly failed to do so. Instead, "MUBI has buried this information within the same Privacy Policy that MUBI has drafted to meet its other legal obligations." FAC ¶ 67; *see also* Figures 13-17 (screenshots showing the length of MUBI's omnibus privacy policy).

MUBI's attempt to make an end-run around the plain language of the statute is especially pernicious because Congress expressly amended the VPPA in 2012 to regulate "Internet streaming services" like MUBI to ensure they "obtain a consumer's informed, written consent … through the Internet." S. Rep. No. 112-258, at 11. In so doing, Congress warned "providers to use 'distinct and separate' forms when obtaining consent to disclose a consumer's personally identifiable information." *Id.*[6]

**3. Plaintiffs Sufficiently Allege that MUBI Disclosed the Videos that they Requested or Obtained.**

MUBI relies heavily on *Martin v. Meredith Corporation*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023), to argue that Plaintiffs fail to allege that MUBI identified them as having "requested or

[6] As *Walmart* recognized, it is not "burdensome to design a website whereby consumers must click a box confirming their consent to disclosures involving video purchases and click a separate box confirming their consent to all other applicable policies and terms." 2019 WL 11687705, at *2. Indeed, MUBI's competitors have no problem doing so. *See also, e.g.*, https://www.nbc.com/sign-up/email and https://www.nbc.com/general/pages/vppa.

obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). But *Martin* is readily distinguishable because Plaintiffs allege that "[t]he title of every film on MUBI is reflected in the URL of the page. And MUBI has configured the Meta Tracking Pixel on its website to create a PageView event every time a consumer goes to the webpage page playing the video. And the PageView invariably discloses the URL of the webpage, which contains the video title." FAC, ¶ 39. In *Martin*, unlike here, the URLs or webpage titles that the defendant sent to Facebook were not alleged to contain video titles. *See* 2023 WL 2118074, at *3. Here, Plaintiffs allege, and show with pictures, that the URLs sent to Facebook contained video titles and include an example showing that the URL, in fact, included the video title, informing Facebook of the "specific video materials or services" they "requested or obtained." FAC, ¶ 40 & Figures 1-4. For example, if a consumer picks the movie *Passages* from the MUBI library and loads the page including the video player, the PageView event discloses to Meta the URL of the page: https://mubi.com/en/us/films/passages-2022. *Id.* Likewise, if a consumer picks the movie *Rosie Plays Julie*, the PageView event discloses to Meta the URL of the page: https://mubi.com/en/us/films/rosie-plays-julie. *Id.*

In any event, "as the case law … overwhelmingly holds, a complaint need not allege the disclosure of specific video titles; rather, the disclosure together of the user's Facebook IDs and the URLs of the videos the user accessed suffices." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 161, n. 10 (S.D.N.Y. 2023) (collecting cases and expressly distinguishing *Martin*); *see also Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) (same, also collecting cases and citing *Martin* as the lone outlier with a *contra* signal).

Courts in this District have also criticized the reasoning of *Martin* as "ignor[ing] the language of the statute." *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023). "To 'request' something is to actively seek it out, but to 'obtain' something is to gain it, not necessarily by choice. Bleacher Report itself cites Merriam Webster's definition of 'obtain' as 'to gain or attain usually by planned action or effort.' 'Usually' means not always, so by this definition, a thing can be 'obtained' without planned action or effort. Further, if

the Court were to read 'obtained' to require 'requested,' then 'obtained' in the statute would be surplusage because every video obtained would first have been requested." *Id*. (internal citations omitted); *accord* 2022 WL 18135141 (Plaintiff's opposition brief in *Martin*) ("when [Plaintiff] receives the video from [Defendant], he obtains it.")

What the VPPA protects, however, is information that consumers "requested or obtained" a video, not whether they watched it. *See* 18 U.S.C. § 2710(a)(3). In other words, "the disclosure by a streaming service of a person's movie rental history would be enough to state a claim for violation of the VPPA; the person need not have actually watched any of the movies for the act of disclosure to nonetheless constitute a violation of the statute." *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1341, n.3 (N.D. Ga. 2022); *accord Sellers*, 2023 WL 4850180, at *4 (holding that defendant's argument that plaintiff must have "actively elected to view videos" ignored the plain language of the statute).

Though perhaps not in the way it intended, MUBI's analogy to a Blockbuster video store is instructive. *See* MTD at 10. At the time the VPPA was written, many people that rented VHS tapes from Blockbuster often forgot to watch them—a busy jurist like Judge Bork is no exception. The privacy violation leading to the VPPA's passage was not the disclosure of what video Judge Bork actually got around to watching, but the list of the 146 films he 'requested or obtained' at the video store checkout counter. Video store employees were not spying on consumers in their homes to verify whether they actually watched the videos they "requested or obtained" at Blockbuster stores. Congress chose the words "requested or obtained," rather than "watched," deliberately as members of Congress had just seen first-hand the intrusive exposure of that type of information. According to the VPPA's plain language and intent, the fact that Plaintiffs clicked a link on their computer, instructing their browsers to get from MUBI's servers html code containing a video, shows that they "requested or obtained" that video. *See, e.g.*, *Collins*, 2024 WL 895316, at *9 (denying motion to dismiss, finding *Martin* inapposite and holding that the complaint identifies specific video materials through the URL and subscriber's FID); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1335 (N.D. Ga. 2023) (holding that plaintiff's allegation that defendant "sends

the content name of the video the digital subscriber watched, the URL, and the digital subscriber's FID to Facebook … plainly alleges the information Defendant transmits to Facebook identifies a video 'requested or obtained' by Plaintiff").

**B. Plaintiffs Adequately Allege MUBI Violated California Civil Code § 1799.3.**

MUBI also claims California Civil Code § 1799.3, the California state law corollary to the VPPA, demands "disclosure of video recording or sales records linked to a particular individual," and Plaintiffs merely allege disclosure of personal information or webpages untethered to video viewing records. *See* MTD at 11. This argument disregards detailed allegations describing how MUBI discloses both forms of information in combination, specifically by sharing personal identifying information like Facebook IDs alongside URLs listing the titles of videos. Still, even if these mischaracterizations were correct (they are not), MUBI's interpretation of Section 1799.3 is inconsistent with the statute's language.

**1. MUBI Disclosed Information That Collectively Identifies Users *and* The Videos They Accessed.**

MUBI attempts to create the false impression that Plaintiffs do not allege it disclosed identifying information tying users to the videos they viewed. *See* MTD at 11. But the FAC alleges in detail how MUBI uses data tracking technology to share users' identifying information combined with webpage URLs that include the titles of the videos they accessed. In fact, the FAC describes how pixels and cookies technology track and record every time a MUBI user visits a webpage playing a video. *See, e.g.*, FAC, ¶¶ 4, 39, 40, 56–58 & Figs. 1–4, 6–9. Information gathered and shared by these technologies include the URLs that contain the title of the video displayed. *See, e.g.*, *id.* ¶¶ 39 ("The title of every film on MUBI is reflected in the URL of the page," and the Meta Tracking Pixel "discloses the URL of the webpage, which contains the video title."); ¶ 40 & Figs. 1–4 (showing how Meta Pixel discloses MUBI URLs containing the titles of films (*Passages* and *Rosie Plays Julie*) shown on webpage; ¶¶ 56-57 & Figs. 6–7; 58 & Fig. 8–9.

While case law applying Section 1799.3 is limited, multiple federal courts have held that disclosure of a URL that contains a title, description or subject matter of a video is a disclosure of video material covered by the VPPA, and the same reasoning is applicable to Section 1799.3, which

serves to protect similar video privacy interests under California state law. *See, e.g.*, *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023); *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *3 (N.D. Cal. July 28, 2023). Also, considering these allegations, "[w]hether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss." *Ghanaat*, 689 F. Supp. 3d at 721; *see also Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336 (N.D. Ga. 2023).

The FAC also details how the URL and video title information is disclosed "alongside its digital subscribers individual Facebook ID and other persistent identifiers." FAC, ¶ 7; *see also* ¶¶ 8, 49 & 51-53. The Complaint describes how these identifiers allow any third-party recipient to identify the individual consumer. *Id.*, ¶¶ 9, 42 & 47-48. Thus, when combined and shared with users' URL browsing information as "one data point," any third-party can determine what videos users watched. *Id.*, ¶¶ 8-9, 42, 47–49 & 51–53. Just recently, in *Fan v. NBA Properties Inc.*, a California federal court denied a motion to dismiss Section 1799.3 claims where the defendant similarly disclosed Facebook IDs, deemed to be personally identifiable information, together with video-clip viewing activity. *See* No. 23-CV-05069-SI, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024). In sum, Plaintiffs sufficiently allege that MUBI uses data-tracking technology to disclose the name of the video, the URL, and the subscribers' personally identifying information. *See* FAC, ¶¶ 4, 7–9, 39–42, 47–53 & 56–58. Plaintiffs' alleged the disclosure of information under the plain words of the statute, sufficient to state a claim under Section 1799.3.

**2. MUBI's Interpretation of California Civil Code § 1799.3 is Incorrect.**

Contrary to what MUBI asserts, Plaintiffs repeatedly allege the disclosure of personal information that can be linked to users' video history. *Cf.* MTD at 11-13, *with, e.g.,* FAC, FAC, ¶¶ 4, 7–9, 39–42, 47–53 & 56–58. Thus, under the plain words of the statute, Plaintiffs' alleged disclosure of information is sufficient to state a claim under Section 1799.3. Yet even if the Complaint only alleged disclosure of personal information unrelated to video history (it does not), MUBI's interpretation of the statute is incorrect.

Section 1799.3(a) prohibits a person providing "video recording sales or rental services"

from disclosing without consent, "any personal information *or* the contents of any record, *including* sales or rental information." (emphasis added). The use of the term "or" plainly establishes that a violation may be premised on a disclosure of either personal information or the contents of records in isolation. As to the "contents of any record," "records" are broadly defined as "any item, collection, or grouping of information about an individual." Cal. Civ. Code § 1799(e). This broad definition combined with the phrase "*including* sales or rental information," further indicates that disclosure of sales or rental information is not the sole type of record disclosure that may violate the statute. The California Legislature could have drafted the statute to only prohibit the disclosure of records containing video sales or rental information, but it did not. Instead, it chose to use inclusive terms like "or" and "including." Many of the hypotheticals MUBI uses to purportedly show how a broad interpretation of Section 1799.3 would lead to absurd results or constitutional concerns also ignore how its selected hypothetical would likely fall under the exception for "disclosure of names and addresses only for commercial purposes." Cal. Civ. Code § 1799.3(b)(6). This exception reflects a reasonable balance between the interests of businesses and the privacy interests of users that the statute broadly protects by prohibiting disclosure of personal information *or* record contents.

### 3. Plaintiffs Did Not Provide Valid Written Consent to The Disclosure of Their Information.

While Section 1799.3 does not have a similar distinct and separate consent form requirement, like the VPPA, MUBI's homepage with links to its Terms of Service and Privacy Policy, FAC, Figs. 10 & 11, do not establish consent under California law. Absent a consumer's actual knowledge of an agreement, "an enforceable contract will be found based on an inquiry notice theory only if: the website provides reasonably conspicuous notice of the terms to which the consumer will be bound." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Where, as here, the terms are only made available through a "tiny" hyperlink displayed against a slightly contrasting background the website design falls short of meeting the reasonably conspicuous standard. *See, e.g.*, *Brooks v. IT Works Mktg., Inc.*, 2022 WL 2079747, at *6 (E.D. Cal. June 9, 2022); *accord Williams v. DDR Media, LLC*, 2023 WL 2314868, at Appendix A (N.D. Cal. Feb. 28, 2023) (finding dark grey underlined hyperlinks against light grey background not reasonably conspicuous).

Here, the textual notice of the tiny hyperlinks on MUBI's website are just as inconspicuous as hyperlinks found unenforceable in a similar online sign-up screen. *Compare* FAC, Fig. 11, *with In re Stubhub Refund Litig.*, 2023 WL 5092759, at Appendix A (9th Cir. Aug. 9, 2023) and *Lopez v. Dave Inc.*, 2022 WL 17089824, Appendix (N.D. Cal. Nov. 21, 2022), *aff'd* 2023 WL 8594393 (9th Cir. Dec. 12, 2023).




Complaint Figure 11




*Lopez* Appendix A







Complaint Figure 11 *Stubhub* Appendix A

As in *Lopez* and *in re Stubhub*, the primary method MUBI used to distinguish its hyperlinked terms was to underline them. But "while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent. Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient." *Berman*, 30 F.4th at 857. Also, while MUBI presents certain images showing hyperlinks may at times be displayed in contrasting blue font, rather than white, *see* MTD at 15, this merely demonstrates how the conspicuousness of notice and consent is a highly factual determination inappropriate to resolve on a motion to dismiss. *See Fan*, 2024 WL 1297643, at *3 ("Whether reasonable consumers would understand . . . they were consenting to the disclosure of their [PII] to Meta, is a question that should be resolved on a fuller factual record."); *see also In re Google Inc. Gmail Litig*., No. 13-MD-02430-LHK, 2014 WL 1102660, at *15 (N.D. Cal. Mar. 18, 2014).

Here, the text disclosing the hyperlinks is also small and in significantly smaller font than any other text on the page surrounding it. "Even text that is just slightly smaller, or slightly further

away from the box or button the consumer must click on must, at some point, exceed the limits of what constitutes adequate notice." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481–82 (2021). Worse yet, the background of MUBI's homepage is filled with a flashy, fast-paced video clip that plays on repeat, drawing users' attention away from the tiny hyperlinks and further obscuring their importance. *See* FAC, ¶ 69 ("The main visual element of the screen is the background which consists of rolling clips of movies available on MUBI.") & Figs. 18-20; *see also Berman, LLC*, 30 F.4th at 857 ("[V]isual elements draw the user's attention away from the barely readable critical text" are inconsistent with conspicuous notice).

MUBI also fails to conspicuously provide users with an opportunity to understand and exercise their right to withdraw consent for ongoing disclosures of their PII. Information on how to opt-out of MUBI's data sharing practices is "buried several pages deep with its Privacy Policy, at the end of section nine." *See* FAC, ¶ 68 & Figs. 13-17. The MUBI Privacy Policy submitted as an exhibit in support of this motion spans twenty pages. *See* Rubin Decl., Ex. A. Courts have expressed skepticism over whether similar terms in a multi-page privacy policy are sufficient to establish consent. *See, e.g.*, *Fan*, 2024 WL 1297643, at *3. Further, while the Privacy Policy contains general references to sharing "personal data," nowhere does it expressly state that this includes the titles of specific videos users viewed on MUBI. *See* Rubin Decl., Ex. A, at *e.g.*, p. 9 (Section 4: Disclosing Information); p. 13-17 (Section 9: Cookies, Web Beacons, and Other Technologies). Accordingly, the Court should deny MUBI's motion to dismiss based on claims users consented to the disclosure of their personal information.

#### 4. MUBI Provides Video Recording Sales or Rental Services.

MUBI next argues that it falls outside the scope of Section 1799.3 because it does not provide "video recording sales or rental services." MTD at 16. The statute does not define this term so MUBI relies on plain language definitions of "sale" and "rental. *Id*. But MUBI fails to address other authorities demonstrating that it *does* provide video recording sales of rental services.

First, in *Fan v. NBA Properties Inc.*, the court recently held that a company operating a website where users could buy, sell and trade "pre-recorded video clips of . . . highlight worthy

plays" provided video recording sales under Section 1799.3. 2024 WL 1297643, at *3. MUBI is analogous to the defendant in *Fan*, as each provides access to video recordings to paying users.

Second, multiple courts analyzing the VPPA have concluded under analogous circumstances that video streaming websites like MUBI are "video tape service providers" subject to the federal statute. *See, e.g.*, *Ghanaat*, 689 F. Supp. 3d at 718; *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 852 (N.D. Cal. 2022) (defendant can be engaged in the business of delivering video content where "the defendant's product [is both] substantially involved in the conveyance of video content to consumers [and] significantly tailored to serve that purpose."); *In re Hulu Priv. Litig.*, No. 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) (holding that a video streaming website is a video tape service provider even if plaintiff did not pay for service). Similarly, MUBI's status as a video streaming platform should not insulate it from liability under Section 1799.3.

The dictionary definitions MUBI cites in isolation should not distract from the reality of what MUBI is—a business devoted to providing users with access to video recordings they can select and watch. MUBI describes itself as a "global streaming service, production and film distributor dedicated to elevating great cinema," and the tagline "Watch Great Cinema" is emblazoned on its website. *See* FAC, ¶ 1 & Fig. 10. The subscription streaming service MUBI offers is analogous to the services previously provided by video rental stores, as both provide access to video recordings that patrons watch in the privacy of their own homes. This similarity is further evidenced by how the advent video stream services signaled the death-knell of video rental stores, with the former ultimately supplanting the latter. The fact that MUBI users enroll in a subscription service rather than paying individually for each movie they view is not a meaningful distinction. MUBI's subscription model can be likened to a video rental store where patrons pay a monthly membership fee permitting them to rent a set (or unlimited) number of videos per month. In that case, no one would argue that the video rental store was no longer in the business of providing video recording rental services. Finally, MUBI fails to identify any reason why an individual would have a heightened privacy interest in a list of movies rented from Blockbuster, but not in a similar list of movies privately viewed at home through their subscription streaming service. Based on these

realities, there is no reason for the Court to conclude that MUBI, which exists to provide users with access to video content, is not subject to Section 1799.3.

**5. Plaintiffs Plausibly Allege Transmission of Identifiable Information Via the X and TikTok Pixels.**

Lastly, MUBI argues that Plaintiffs do not allege that it transmitted video history records to X or TikTok using pixels. *See* MTD at 16-17. This is another mischaracterization. The Complaint describes how MUBI installed TikTok and Twitter tracking pixels that "all work in much the same way as the Meta Tracking Pixel." FAC, ¶ 54. As with the Meta Pixel, the Complaint details how the TikTok Pixel generates "Page View" and "View Content" events that transmit the title of the video viewed, *id.* ¶ 56 & Figs. 6-7, and TikTok uses this to learn about and target MUBI consumers. *Id.* ¶ 57. Plaintiffs also allege that Twitter's Pixel discloses URL information that includes video titles, and Twitter's cookies can likewise be used to identify specific MUBI users. *Id.* ¶ 58 & Figs. 8-9. Based on these allegations, the Court should deny MUBI's motion to dismiss Section 1799.3 claims involving the use of non-Meta tracking pixels.

**C. MUBI's Video Privacy Violations are Actionable under the UCL.**

Contrary to Mubi's arguments, its video privacy violations satisfy both the unlawful and unfair prongs of the UCL. First, as MUBI concedes, the unlawful prong rises and falls with the VPPA claim. MTD at 24; *accord* ¶ 218. Here, because Plaintiffs sufficiently allege a VPPA claim, they can meet the UCL's unlawful prong too. *See, e.g.*, *Ade v. Viki, Inc.*, No. 23-CV-02161-RFL, 2024 WL 1880153, at *4 (N.D. Cal. Mar. 28, 2024) (explaining that "the plaintiffs state a claim for violation of the VPPA, which may support a UCL claim under the statute's unlawful prong.").[7]

Second, Plaintiffs sufficiently allege the unfair prong because MUBI "offends an established public policy, as reflected in the VPPA [and] California Civil Code section 1799.3."

[7] In *Viki*, the court held that users could not show an economic injury because they never alleged that they paid for the service. Here, in contrast, Plaintiffs all allege that they paid for MUBI subscriptions, and, had they known about Mubi's privacy violations, they "paid more in subscription fees than they otherwise would have." ¶ 219; *accord In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1219 (C.D. Cal. 2017) (noting in another VPPA case that a "price premium theory is cognizable under California's UCL."). Defendant does not challenge this point.

FAC ¶ 215. "Plaintiffs' unfair-prong claim is tethered to the United States' and California's policy for protecting the privacy of video media purchasers." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1024 (N.D. Cal. 2019). "California courts apply a 'tethering' test, under which the 'unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Id*. (citing *Lozano v. AT & T Wireless Servs., Inc*., 504 F.3d 718, 735 (9th Cir. 2007)). In this case, the tethering test is clearly met due to the United States' and California's intent through legislation to ensure that consumers' privacy interests in their video viewing history are not invaded by video providers such as MUBI.

MUBI also argues that the unfair prong fails because Plaintiff's agreed to its privacy policy. MUBI again asks the Court to ignore the requirements of the VPPA and California law and instead allow MUBI to determine what type of privacy policy disclosure is sufficient. *See supra* III(A)(2) and (B)(3). But that is not how the law works. Additionally, the FAC plainly alleges that the hyperlinks to the policy are "not provided in a clear and conspicuous manner." FAC ¶ 69 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022)). In *Berman*, the Ninth Circuit held that an agreement was never formed because the hyperlinks to the agreement were not reasonably conspicuous. *See* 30 F.4th at 858.

**D. Plaintiffs' Have Standing to Enjoin MUBI's Unconsented Privacy Violations.**

MUBI's lastly argues that Plaintiffs lack standing to pursue injunctive relief because Plaintiffs' "alleged harms involve their use of MUBI in the past." MTD at 25. Not so. In *Brown v. Google LLC*, the court held that "Plaintiffs have demonstrated that absent an injunction, [defendant] will continue to collect users' private browsing data for its own use without users' express consent." 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023). Likewise, here, Plaintiffs allege that MUBI has installed "tracking pixels" which "send consumers' viewing histories to third-party providers . . . without their consent." ¶ 1. Moreover, several named Plaintiffs allege that they are currently still subscribed to MUBI—in other words, their use of MUBI is not in the past, but rather present and future as well. *See* ¶¶ 11-16 & 18-19. "To the extent Plaintiffs allege an injury from the ongoing use of their intercepted data by Defendant and [a third-party], Plaintiffs have

adequately alleged a 'real and immediate threat of repeated injury in the future.'" *D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *7 (S.D. Cal. Mar. 28, 2024). Finally, the VPPA expressly permits "the Court to issue injunctive relief." *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1166 (W.D. Wash. 2010) (citing 18 U.S.C. § 2710(c)(2)(D)).

## IV. CONCLUSION

For the foregoing reasons, MUBI's motion to dismiss should largely be denied. Alternatively, leave to amend should be granted.

Dated: July 8, 2024

Respectfully Submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Stefan Bogdanovich*
Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiffs McMahan and Doe & the Putative Class*

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**

Brandon M. Wise*
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
Telephone: (314) 833-4825
E-mail: bwise@peifferwolf.com

*Attorneys for Plaintiffs McMahan and Doe & the Putative Class*

**ALMEIDA LAW GROUP LLC**

David S. Almeida*
849 W. Webster Avenue
Chicago, Illinois 60614
Telephone: 312.576.3024
Email: david@almeidalawgroup.com

*Attorneys for Plaintiffs McMahan and Doe & the Putative Class*

**ZIMMERMAN REED LLP**

By: /s/ Jeff Westerman
Jeff Westerman (State Bar No. 94559)
6240 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781
Email: Jeff.westerman@zimmreed.com

*Attorneys for Plaintiffs Samuel Edwards, Michelle Brown, Dennis Depew, Cinthia Davis, Maritza Hernandez, Siosiua Mafoa, & the Putative Class*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

By: /s/ John J. Nelson
JOHN J. NELSON (SBN 317598)
402 W. Broadway, Suite 1760
San Diego, California 92101
Tel.: (872)-365-7060
E-mail: jnelson@milberg.com

*Attorneys for Plaintiff Debjani Sarkar & the Putative Class*

**pro hac vice* forthcoming

Filer's Attestation:

I Stefan Bogdanovich, the filer of this document, attest pursuant to Local Rule 5-1(i)(3) that all other signatories have concurred in the filing of this document.