**LATHAM & WATKINS LLP**
Michael H. Rubin (CA Bar No. 214636)
*michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Gary Feinerman (admitted *pro hac vice*)
*gary.feinerman@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone +1.312.876.7700

*Attorneys for Defendant MUBI, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SAMUEL EDWARDS, MICHELLE BROWN, DENNIS DEPEW, CINTHIA DAVIS MARITZA HERNANDEZ, SIOSIUA MAFOA, JOHN DOE, AALANY MCMAHAN, and DEBJANI SARKAR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MUBI, INC.,<br><br>Defendant. | Case No. 5:24-cv-00638-EJD<br><br>**DEFENDANT MUBI, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: October 10, 2024<br>Time: 9:00 A.M.<br>Court: Courtroom 4, 5th Floor<br>Hon. Edward J. Davila |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs' VPPA Claim Should Be Dismissed ..... 2

1. Plaintiffs Do Not Rebut MUBI's Article III Standing Argument ..... 2

2. On The Merits, Plaintiffs' VPPA Claim Fails Because MUBI Did Not Disclose Specific Videos They Requested or Obtained ..... 4

B. Plaintiffs' Section 1799.3 Claim Should Be Dismissed ..... 7

1. Plaintiffs Do Not Plausibly Allege that MUBI Disclosed a "Record" of "Sales or Rental Information" ..... 7

2. Plaintiffs Provided "Written Consent" to the Disclosure of Their Information ..... 8

3. Plaintiffs Fail to Allege that MUBI Is in the Business of Providing "Video Recording Sales or Rental Services" ..... 10

4. Plaintiffs' Section 1799.3 Claim Fails as to the X and TikTok Pixels Because They Are Not Alleged To Transmit Identifiable Information ..... 11

C. Plaintiffs Concede Their CIPA Claim Should Be Dismissed ..... 11

D. Plaintiffs Do Not Adequately Plead a UCL Claim ..... 11

1. Plaintiffs Do Not Have Statutory Standing to Pursue a UCL Claim ..... 12

2. Plaintiffs Do Not Plead An Inadequate Remedy At Law ..... 12

3. Plaintiffs Do Not State an Unlawful or Unfair UCL Claim ..... 13

E. Plaintiffs Lack Standing to Pursue Injunctive Relief ..... 14

III. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132 (N.D. Cal. 2021) ........ 13

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ........ 9

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ........ 14

*Brooks v. IT Works Mktg., Inc.*, 2022 WL 2079747 (E.D. Cal. June 9, 2022) ........ 9

*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015 (N.D. Cal. 2019) ........ 13

*Collins v. Pearson Educ., Inc.*, 2024 WL 895316 (S.D.N.Y. Mar. 1, 2024) ........ 3, 6

*Collins v. Pearson Educ., Inc.*, No. 23-cv-2219 (S.D.N.Y. Mar. 15, 2023) ........ 6

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ........ 13, 14

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ........ passim

*Fan v. NBA Props. Inc.*, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ........ 7

*Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006 (D. Minn. 2023) ........ 3

*Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714 (N.D. Cal. 2023) ........ 7

*Golden v. NBCUniversal Media, LLC*, No. 22-cv-9858 (S.D.N.Y. Feb. 17, 2023) ........ 6

*Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308 (9th Cir. 2022) ........ 13

*Harris v. PBS*, No. 22-cv-2456 (N.D. Ga. June 20, 2022) ........ 6

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 3

*In re Stubhub Refund Litig.*, 2023 WL 5092759 (9th Cir. Aug. 9, 2023)....................9

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................12

*Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005 (9th Cir. 2024)....................9

*Lopez v. Dave Inc.*, 2022 WL 17089824 (N.D. Cal. Nov. 21, 2022)....................9

*Martin v. Meredith Corporation*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023)....................4, 5

*May v. Philo, Inc.*, 2023 WL 4410505 (N.D. Cal. July 7, 2023)....................3

*Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191 (N.D. Cal. 2014)....................11

*Recycle for Change v. City of Oakland*, 856 F.3d 666 (9th Cir. 2017)....................12

*Salazar v. Paramount Glob.*, 683 F. Supp. 3d 727 (M.D. Tenn. 2023)....................3

*Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180 (N.D. Cal. July 28, 2023)....................6, 7, 8

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021)....................9, 10

*Soman v. Alameda Health Sys.*, 2023 WL 336632 (N.D. Cal. Jan. 20, 2023)....................4

*Stephens v. I.C. Sys., Inc.*, 2023 WL 4316788 (C.D. Cal. Apr. 6, 2023)....................4

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125 (C.D. Cal. 2011)....................12, 13

*Trammell v. KLN Enters., Inc.*, 2024 WL 1722243 (S.D. Cal. Apr. 22, 2024)....................14

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)....................passim

*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017)....................12

**STATUTES**

Cal. Civ. Code § 1799.3....................*passim*

# I. INTRODUCTION

Plaintiffs fail to seriously engage with many of MUBI's arguments for dismissal, and they do not come to grips with the fact that they agreed to the *precise* conduct and disclosures challenged in the Complaint (Dkt. 25, "FAC").[1] And despite charging that MUBI engaged in sweeping privacy violations, they now admit that they remain willing and paying subscribers to MUBI's service, undermining any plausible claim that MUBI violated their rights. Plaintiffs also outright abandon their CIPA claim, admitting that it was improperly pled and should be dismissed with prejudice.

MUBI's Article III standing challenge posits that Plaintiffs' only alleged injury is that MUBI did not *format* its consent flow in the specific way that the VPPA requires. Plaintiffs respond that they can meet their burden to show standing by simply pleading *any* VPPA claim. That response elides MUBI's argument, which is that the procedural "formatting error" at the heart of the FAC's VPPA claim cannot provide a basis for Article III standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Moreover, on the merits, Plaintiffs offer no response to MUBI's systematic showing that its alleged "PageView" URL disclosures do not disclose Plaintiffs' "video-watching behavior," as any VPPA claim requires. Plaintiffs' principal response—that the disclosures are actionable simply because the URL may contain a movie title—is wrong and cannot save their claim.

Plaintiffs' claim under Cal. Civ. Code § 1799.3 (the California analog to the VPPA) deserves a similar fate. MUBI's alleged "PageView" URL disclosures do not reveal Plaintiffs' "sales or rental information." And Plaintiffs cannot evade their consent to those disclosures by attacking the consent flow for MUBI's Terms as "tiny" and "inconspicuous," as the undisputed and judicially noticed facts show otherwise.

Plaintiffs make little effort to defend their UCL claim. They do not respond to MUBI's showing that they lack (1) statutory standing and (2) any grounds to seek equitable relief (all that

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in MUBI's opening brief in support of MUBI's Motion to Dismiss (Dkt.. 29, "Mot.").

the UCL allows) given their requests for monetary relief. Plaintiffs further admit that any "unlawful" claim under the UCL must fail alongside their VPPA claim. And as to their UCL "unfair" claim, Plaintiffs do not demonstrate a larger public policy violation that is actually tethered to their privacy interests, and instead simply claim that MUBI should be punished for their own failure to read MUBI's Terms.

Finally, and at a minimum, Plaintiffs' plea for injunctive relief should be dismissed under Article III because they do not claim that they will continue to be harmed by MUBI's alleged disclosures of their information, especially given that they now indisputably are aware of the nature of those disclosures and can choose whether to continue to use MUBI's platform.

Plaintiffs' claims should be dismissed in their entirety.

## II. ARGUMENT

### A. Plaintiffs' VPPA Claim Should Be Dismissed

#### 1. Plaintiffs Do Not Rebut MUBI's Article III Standing Argument

Plaintiffs fundamentally misunderstand MUBI's standing argument. They assert that the question of consent under the VPPA is a merits issue and that MUBI has failed to satisfy the VPPA's specific statutory consent requirements. Opp. at 6-7. But MUBI's standing challenge is not that Plaintiffs consented to video disclosures in the manner required by the VPPA. Rather, it is that the only *injury* alleged in the FAC arises from MUBI's alleged failure to obtain Plaintiffs' consent in a "separate and distinct form (as required by the VPPA)." FAC ¶ 62. Plaintiffs lack standing here because this type of "formatting" injury does not suffice under Article III.

In an effort to elide this issue, Plaintiffs contend that simply pleading a VPPA claim is sufficient on its own to confer standing because the statute addresses the "disclosure of private information," a "traditionally recognized" harm in American courts. Opp. at 5. That is wrong: As the Supreme Court has held, merely alleging a federal statutory violation is not sufficient to confer standing, since a court "cannot treat an injury as 'concrete' for Article III purposes based only on Congress's say-so." *TransUnion*, 594 U.S. at 426 (citations omitted). Although "Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform

something that is not remotely harmful into something that is." *Id.* (citations omitted). Plaintiffs thus cannot point to the mere presence of a VPPA claim to overcome their Article III hurdle.

Instead, to satisfy Article III, Plaintiffs must plead that they suffered a "concrete" injury *beyond* a bare "procedural violation" of a federal statute. *Id.* at 440. And despite the Opposition's reference to the "disclosure of private information," that is not the harm the FAC alleges. Nor could it be: Plaintiffs do not dispute that they agreed to MUBI's Terms, which included granular explanations of MUBI's use of website analytics tools and clear instructions on how to disable them. *See* Mot. at 3-5, 7. There was thus no privacy harm flowing from MUBI's "PageView" URL disclosures, as Plaintiffs indisputably were aware of the use of those analytics tools and consented to those disclosures.

Plaintiffs' real complaint here is that MUBI's consent flow was "formatted incorrectly and deprived [Plaintiffs] of their right to receive information in the format required by statute." *TransUnion*, 549 U.S. at 440. That MUBI's Terms actually *did* reveal the specific tools and information sharing at issue—meaning that MUBI's alleged violation was not strictly following the VPPA's formatting requirements, rather than failing to inform users of its use of those tools and information sharing altogether—differentiates this case from those cited by Plaintiffs. Opp. at 5-6.[2] And Plaintiffs make no meaningful attempt to distinguish the cases cited in MUBI's opening

---

[2] *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 & n.2 (9th Cir. 2017) (defendant argued not that its terms disclosed that it engaged in information sharing, but rather that there was no risk of privacy harm at all); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (same); *Salazar v. Paramount Glob.*, 683 F. Supp. 3d 727, 739 (M.D. Tenn. 2023) (defendant argued not that its terms disclosed that it engaged in information sharing, but rather that disclosure is not a traditional harm); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1015-16 (D. Minn. 2023) (same); *see also Collins v. Pearson Educ., Inc.*, 2024 WL 895316, at *2-3 (S.D.N.Y. Mar. 1, 2024) (defendant argued not that its terms disclosed that it engaged in information sharing, but rather that plaintiff's allegations of injury were conclusory); *May v. Philo, Inc.*, 2023 WL 4410505, at *1 (N.D. Cal. July 7, 2023) (deferring ruling on Article

brief, arguing only that they involve "different legal statutes." *Id.* at 6 n.5. But both *Soman* and *Stephens* relied on the same *TransUnion* principles to dismiss statutory claims arising from mere formatting errors, holding that because the plaintiffs there received "clear disclosure[s] of specifically what would occur with respect to [their] private consumer information," they could not plead a concrete Article III injury by merely alleging that those disclosures were not in the precise format required by the statute. *Soman v. Alameda Health Sys.*, 2023 WL 336632, at *4 (N.D. Cal. Jan. 20, 2023); *see also Stephens v. I.C. Sys., Inc.*, 2023 WL 4316788, at *5 (C.D. Cal. Apr. 6, 2023) (similar). The same result follows here.

Plaintiffs also do not address their failure to allege they would have acted differently had MUBI formatted its disclosures in the manner supposedly required by the VPPA. Mot. at 8. Indeed, Plaintiffs now claim that they *still* use MUBI *despite* knowing that their information is being shared with third parties (Opp. at 18-19)—which further undermines any possible claim that they have suffered a concrete privacy harm. *See* Mot. at 8; *TransUnion*, 594 U.S. at 440.

Plaintiffs' VPPA claim should be dismissed for failure to satisfy Article III.

### 2. On The Merits, Plaintiffs' VPPA Claim Fails Because MUBI Did Not Disclose Specific Videos They Requested or Obtained

As MUBI explained, even if Plaintiffs adequately alleged Article III standing, their VPPA claim fails on the merits because the "PageView" URL events that MUBI allegedly disclosed to third parties do not provide information about users' "video-watching behavior," as any VPPA claim requires. *Eichenberger*, 876 F.3d at 985 (citations omitted); *see* Mot. at 9-10. Plaintiffs' principal response is that, unlike the VPPA-compliant URL disclosures at issue in *Martin v. Meredith Corporation*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023), MUBI's disclosures are actionable

---

III standing and merits issues because evidence would be dispositive as to both). Unlike MUBI, the defendants in those cases essentially argued that no VPPA violation can give rise to a concrete Article III injury. MUBI does not dispute for present purposes that an alleged VPPA violation could *conceivably* give rise to a privacy injury sufficient under Article III; rather, MUBI argues that Plaintiffs do not allege sufficient facts *in this case* to show that they suffered such an injury.

because its URLs allegedly contain the "title" of a movie to which the webpage relates. Opp. at 7-8. This argument ignores the fundamental flaw that MUBI identified in Plaintiffs' liability theory: Disclosing movie "titles" does not indicate that a webpage visited on MUBI's website actually contains a video, much less that a user "requested[,] obtained," or actually *watched* any video material that might have been accessible on a webpage. Mot. at 10. Plaintiffs do not dispute that the great majority of films referenced on the MUBI platform cannot actually be watched there (*id*. at 3), or that the PageView transmission reveals nothing more than the fact that a user visited a particular webpage on MUBI's website.

Plaintiffs' attempts to distinguish *Martin* fall short. Plaintiffs concede that *Martin* dismissed a VPPA claim where the only disclosures—which consisted of webpage URLs—did not indicate whether a user had actually requested or obtained specific videos that may have appeared on the webpage. Opp. at 7-8. The same is true here. Visiting a webpage on MUBI's website is not the same as having requested or obtained a specific video, particularly where the page may not provide access to video content *at all*, or where the page includes information about a film in addition to providing access to video content. The MUBI webpage for the film *Passages*, cited in the FAC (¶ 40) and Opposition (at 8), illustrates the point. The webpage contains a range of non-video content, such as a synopsis of the film, a list of awards it won, a list of festivals where it was presented, linked features and articles for the cast and crew, critics' reviews of the film, user reviews of the film, and links to related MUBI articles and other webpages—all accessible via https://mubi.com/en/us/films/passages-2022.[3] All this content can be perused for its own sake, without "requesting, obtaining," or watching any video content made available on the page. Like perusing videos on a shelf at a Blockbuster, browsing habits are not governed by the VPPA, which protects only a person's "video-watching behavior." *Eichenberger*, 876 F.3d at 985. In short, as *Martin* held, because visiting a URL is not the same as watching a video found there, disclosing that a person visited a webpage does not indicate that the person "requested or obtained specific video materials on that webpage." *Martin*, 657 F. Supp. 3d at 284.

[3] This is the standard URL structure for all webpages on MUBI. *See, e.g.*, FAC ¶ 40.

Both the *Collins* and *Sellers* decisions cited by Plaintiffs make this exact distinction. Both courts found *Martin* inapposite because, "critically," not all the webpages on the *Martin* defendant's website included videos, and even if they had, the disclosed URL would not reveal whether a user had actually accessed the video materials on that multimedia webpage. *Collins*, 2024 WL 895316, at *9; *see also Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180, at *3 (N.D. Cal. July 28, 2023) (similar). By contrast, the defendant's webpages in *Collins* and the other cases Plaintiffs cite included *only* video content, such that "when a user *clicks on* and requests a video," the defendant "discloses to Meta whether a video was requested *(in contrast to the user requesting non-video material)*." *Collins*, 2024 WL 895316, at *9 (emphases added); *see also* Dkt. 1 (Complaint) ¶ 25, *Collins v. Pearson Educ., Inc.*, No. 23-cv-2219 (S.D.N.Y. Mar. 15, 2023); Dkt. 14 (First Am. Complaint) ¶¶ 44-45, *Golden v. NBCUniversal Media, LLC*, No. 22-cv-9858 (S.D.N.Y. Feb. 17, 2023) (webpage included only video, article, and brief caption); Dkt. 1 (Complaint) ¶ 39, *Harris v. PBS*, No. 22-cv-2456 (N.D. Ga. June 20, 2022) (webpage contained only video documentary and synopsis). And in *Sellers*, the alleged disclosure included not just a URL, but "the *content name* of the video the digital subscriber *watched*." 2023 WL 4850180, at *3 (emphases added). The facts here align with *Martin*, not *Collins* or *Sellers*.

Plaintiffs next attempt to distinguish "obtaining" videos on a webpage from "watching" videos, claiming that a person "need not have actually watched any of the movies" for a disclosure regarding that person to violate the VPPA. Opp. at 9. That expansive view of the VPPA cannot be reconciled with the Ninth Circuit's holding that the VPPA protects against disclosures of individuals' "video-*watching* behavior." *Eichenberger*, 876 F.3d at 985 (emphasis added). And Plaintiffs' view is inconsistent with their own allegations, which make the point of claiming—incorrectly—that MUBI discloses PageView events "every time a consumer goes to the webpage page *playing the video*." Opp. at 8 (citing FAC ¶ 39) (emphasis added). These allegations reflect Plaintiffs' acknowledgement that the VPPA covers disclosures revealing content that a user intended to obtain and *watch*, and not disclosures showing that a user simply browsed a webpage that may relate to movies. *See Sellers*, 2023 WL 4850180, at *3.

In any event, the supposed distinction drawn by Plaintiffs makes no difference here, as

MUBI's alleged PageView disclosures do not even reflect that a user "obtained" a video that could be viewed on MUBI's website. Extending VPPA liability to records indicating a user visited a webpage related to a movie unduly broadens the VPPA's scope beyond video-watching behavior to include video consideration, discussion, and/or education. *See* Mot. at 10 ("Plaintiffs improperly seek to extend liability under the VPPA from what it actually covers—records showing that a user 'requested or obtained' a specific video—to records showing that a user considered, discussed, or learned about a video."). Countless webpages relate to video content without being exclusively or even primarily devoted to that content or luring a user to the page for the purpose of watching video content. This Court should reject Plaintiffs' attempt to expand the VPPA to cover the mere act of visiting such webpages.

### B. Plaintiffs' Section 1799.3 Claim Should Be Dismissed

Plaintiffs' Opposition does not rebut the multiple independent grounds for dismissing their Section 1799.3 claim.

#### 1. Plaintiffs Do Not Plausibly Allege that MUBI Disclosed a "Record" of "Sales or Rental Information"

As with their VPPA claim, Plaintiffs fail to counter MUBI's showing that the FAC does not plausibly allege that it disclosed information protected by Section 1799.3. As MUBI explained, Section 1799.3 is the California analog to the VPPA, and like the VPPA, it governs the disclosure of video recording or sales records linked to a particular individual. Mot. at 11-12. Because the FAC's allegations plausibly show only that MUBI disclosed the webpages Plaintiffs visited on MUBI's website—and not that MUBI disclosed the "contents of any record, including sales or rental information" associated with them—Plaintiffs do not state a viable Section 1799.3 claim.

None of Plaintiffs' cited cases support a different result; they all indisputably involved webpages that exclusively provided video content. *See Fan v. NBA Props. Inc.*, 2024 WL 1297643, at *1 (N.D. Cal. Mar. 26, 2024); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720-21 (N.D. Cal. 2023); *Sellers*, 2023 WL 4850180, at *3. Here, by contrast, Plaintiffs do not dispute that the majority of webpages on MUBI's website do not allow a user to watch videos, and even the webpages highlighted in the FAC contain a range of non-video content concerning each film.

Unable to show that both required elements of a Section 1799.3 claim are met—*i.e.*, the disclosure of personal identifiers *together with* specific video recording or sales records—Plaintiffs argue that they need allege only one. Under that nonsensical interpretation of the statute, Plaintiffs could maintain a claim under Section 1799.3—which specifically addresses the privacy of persons "who *rent or buy video cassette movies*" (Mot. at 11-12)—even if no video or sales records were disclosed by MUBI, so long as *any* "personal information" was disclosed. MUBI's opening brief addressed at length why this interpretation is wrong, and Plaintiffs do not respond to any of the points MUBI raised. As the legislative history makes clear, the California Legislature intended Section 1799.3 to protect the same interests as the VPPA and ensure that the same protections were extended under California law. *Id*. Plaintiffs ignore these points and otherwise fail to contend with the backwards implications of their reading—that a statute focused on protecting the privacy of video-watching behavior somehow prohibits disclosures that reveal nothing about that behavior. Plaintiffs cite nothing to support such a drastic result, and their interpretation should be rejected.

**2. Plaintiffs Provided "Written Consent" to the Disclosure of Their Information**

Plaintiffs' Section 1799.3 claim fails on the independent ground that they gave their "written consent" to the disclosure of their information by giving their consent in connection with MUBI's Terms of Service and Privacy Policy. *See* Mot. at 13-15. Plaintiffs concede that they agreed to MUBI's Terms and Privacy Policy and do not dispute that, unlike the VPPA, Section 1799.3 does not require the consent be presented in any specific format. Instead, Plaintiffs argue that MUBI's disclosures were not presented in a "reasonably conspicuous" manner on MUBI's homepage. But Plaintiffs' selective reference to only one portion of MUBI's homepage, and their inapt comparisons to terms in other cases, cannot evade the reality that they validly consented here.

As an initial matter, Plaintiffs misrepresent MUBI's registration process by claiming its website "simply underscor[es]" the hyperlinks to the Terms. Opp. at 13-14. Not so. MUBI provides links to its Terms in two different places on its homepage; once in white font against a black background, and again in classic blue hyperlink font against a white background (in contrast to the black font for the language that is not a hyperlink). Mot. at 15. In both presentations, the

hyperlinked Terms are underlined to further distinguish them from the rest of the page. *Id.* These facts—evident from the face of the FAC—are alone sufficient to distinguish Plaintiffs' most-cited case (*Berman*), where the only differentiating factor for the hyperlinked terms was underlined text. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). And Plaintiffs' comparison of the contrasting text on MUBI's homepage to cases where courts rejected gray text against a gray or white background is plainly inapt. *See Lopez v. Dave Inc.*, 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022) (gray font against gray background); *In re Stubhub Refund Litig.*, 2023 WL 5092759, at *2 (9th Cir. Aug. 9, 2023) (gray text against white background).

Further, color and underlining are not the only factors pertinent to whether terms are "reasonably conspicuous," and even under the standards proffered in Plaintiffs' cite cases, MUBI's Terms pass the test. For example, the Terms are presented "near the checkbox, the electronic acknowledgment, or the scroll box." *Brooks v. IT Works Mktg., Inc.*, 2022 WL 2079747, at *7 (E.D. Cal. June 9, 2022) (finding relevant terms unacceptable because they were linked in bottom corner of webpage). And unlike the screen in *Berman*, MUBI's webpage "lacks clutter," allowing the contrasting font to remain unencumbered and putting users on notice that proceeding with the registration process establishes their agreement. *Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024). Plaintiffs argue that the film playing in the background of MUBI's homepage is distracting (Opp. at 15), but the contrast of static white text against the dramatic dark background actually serves to highlight that area for focus. *See Keebaugh*, 100 F.4th at 1021 ("The design elements use a contrasting font color making the notice legible on the dark background." (citation and internal quotations omitted)).

It is likewise pertinent that Plaintiffs were presented with multiple opportunities to click through to MUBI's Terms over the course of the subscription process. Even Plaintiffs' own cited authority urges courts to "begin by considering the context of the transaction." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 480 (2021). Plaintiffs had two opportunities to click through to the Terms on MUBI's homepage, and a third opportunity during the subscription process, where they were informed that "[a]t the end of [their] free trial, MUBI membership will begin automatically at $12.99 a month" and instructed to "See Terms & Conditions" (via blue

hyperlink). FAC, Fig. 12; Mot. at 15. "The registration process clearly contemplated some sort of continuing relationship … that would require some terms and conditions," putting users on notice of the Terms. *Sellers*, 73 Cal. App. 5th at 480. And as already discussed (and as Plaintiffs concede), the blue hyperlink "[]emphasizes the existence of the hyperlink to the Privacy Policy." FAC ¶ 69.

Likely recognizing that MUBI's consent flow provided reasonably conspicuous notice of the Terms, Plaintiffs attempt to undermine their content, contending that MUBI failed to provide an opportunity to opt out of data sharing. That contention is false: Various provisions of MUBI's Terms direct users to opt-out options, which are listed in bullet points, separated from the surrounding text, and include individual links to opt out of each type of cookie. Mot. at 4-5. Plaintiffs' failure to utilize these options does not mean they did not have the opportunity to do so. Plaintiffs also argue that the explanation in MUBI's Terms regarding the sharing of personal data is insufficient because it does not "expressly state that [MUBI shares] the titles of specific videos users viewed on MUBI." Opp. at 15. But the Policy's definition of personal data includes URLs, which is precisely the data that MUBI is alleged to have disclosed. FAC ¶¶ 39-40 ("The title of every film on MUBI is reflected in the URL of the page."). Because "https://mubi.com/en/us/films/passages-2022" is a URL, MUBI's alleged disclosure of URLs visited by users is expressly covered by the Terms. *See* FAC ¶ 66; Mot., Part IV.B.2.

### 3. Plaintiffs Fail to Allege that MUBI Is in the Business of Providing "Video Recording Sales or Rental Services"

For Section 1799.3 to apply, Plaintiffs must plausibly allege that MUBI provides "video recording sales or rental services." Cal. Civ. Code § 1799.3(a). They fail to do so. Plaintiffs cannot allege that MUBI "transfer[s] ownership and title" of its video content to users or "grant[s users] possession and enjoyment" of its video content "in exchange for rent." Mot. at 16 (relying on the ordinary meaning of Section 1799.3's undefined terms "sale" and "rental"). Nor does MUBI "operat[e] a website where users [can] buy, sell, and trade" video content. *Cf.* Opp. at 15-16 (citing *Fan* for the proposition that a defendant operating such a site "provides video recording sales" under Section 1799.3). Instead, MUBI is a subscription service (FAC ¶ 37), which is separate and distinct from a sale or a rental service. Mot. at 16. Without any indication that MUBI provides

"video recording sales" or rentals, Plaintiffs' Section 1799.3 claim should be dismissed.

**4. Plaintiffs' Section 1799.3 Claim Fails as to the X and TikTok Pixels Because They Are Not Alleged To Transmit Identifiable Information**

Plaintiffs fail to allege that MUBI transmitted any information via the TikTok or X Pixels that could personally identify them. Mot. at 16-17. PII means "only that information that would readily permit an ordinary person to identify a particular individual." *Eichenberger*, 876 F.3d at 985 (citation omitted). Nothing in the FAC suggests that this kind of information was revealed for X or TikTok users. Plaintiffs' Opposition points to their allegations that the TikTok and X Pixels "all work in much the same way as the Meta Tracking Pixel" (FAC ¶ 54), but Plaintiffs still fail to explain how one can connect TikTok and X's PageView event with individual users. Plaintiffs allege only that TikTok employs cookies to "learn about MUBI consumers" (*id.* ¶ 57), while X employs cookies "that *can be used* to identify particular users" (*id.* ¶ 58 (emphasis added)). In contrast, the FAC dedicated 11 paragraphs to an explanation of Facebook IDs and how "any ordinary person can use it" to reveal digital subscribers' identities. *Id.* ¶¶ 33-34, 36-37, 39-41, 43-44, 93, 103. The amorphous TikTok and X cookies identify a specific user only when connected with additional data—a process an "ordinary person" cannot undertake. Thus, the Court should dismiss Plaintiffs' Section 1799.3 claim at least as to the non-Meta pixels. Mot. at 17.

**C. Plaintiffs Concede Their CIPA Claim Should Be Dismissed**

Plaintiffs state that they do not oppose MUBI's motion to dismiss their California Invasion of Privacy Act ("CIPA") claim. Opp. at 3 n.4. That claim should be dismissed with prejudice. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (collecting cases).

**D. Plaintiffs Do Not Adequately Plead a UCL Claim**

Plaintiffs do not meaningfully respond to MUBI's arguments that Plaintiffs (1) lack statutory standing to pursue their UCL claim and (2) fail to plead an inadequate remedy at law—both of which independently merit dismissal. *See* Mot. at 22-23. And even beyond these threshold failings, Plaintiffs do not meet the requirements to plead either an unlawful or unfair prong claim under the UCL.

**1. Plaintiffs Do Not Have Statutory Standing to Pursue a UCL Claim**

Plaintiffs do not meaningfully contest MUBI's argument that they lack statutory standing under the UCL (Mot. at 22-23)—nor could they. Black letter law holds that a UCL plaintiff must show that they lost "money or property" as a "result of" the statutory violations at issue. *Van Patten v. Vertical Fitn*$^{es}$*s Group, LL"*, 847 F.3d 1037, 1048 (9th Cir. 2017). Plaintiffs address this requirement in a footnote, claiming MUBI "does not challenge" that Plaintiffs allege "an economic injury" in the form of overpaying for their MUBI subscriptions. Opp. at 17 n.7. That is incorrect. MUBI dedicated an entire section of its brief to arguing that Plaintiffs' overpayment theory is insufficient to show economic injury for purposes of statutory standing. Mot. at 22-23. By relegating their response to a footnote and ignoring the points raised in MUBI's brief, Plaintiffs waived this issue. *See Recycle for Change v. City of Oakland*, 856 F.3d 666, 673 (9th Cir. 2017) (holding that plaintiff waived an argument "never raised in its briefs, other than in a terse one-sentence footnote"); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (failure to respond to an argument amounts to waiver).

In any event, Plaintiffs' "overpayment" allegations are wholly conclusory and implausible. Opp. at 17 n.7 (citing FAC ¶ 219). As with the VPPA claim, these allegations rest on a theory that MUBI's disclosures were not presented in a "distinct and separate form" under the VPPA. *Id.* ¶ 220. But whether Plaintiffs would have paid less for a MUBI subscription in light of its privacy practices turns on whether Plaintiffs were *actually* unaware of MUBI's practices when they opened their accounts—and Plaintiffs, who admit they are MUBI subscribers that consented to MUBI's Terms and Privacy Policy, do not allege this to be the case. These facts distinguish the FAC from the lone case cited by Plaintiffs, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017), which, in holding that the plaintiffs adequately pleaded a VPPA claim, reasoned only that plaintiffs who "*plausibly* allege" overpayment for services have statutory standing. *Id.* at 1219, 1226 (emphasis added). Because statutory standing is a threshold requirement under the UCL, the claim should be dismissed.

**2. Plaintiffs Do Not Plead An Inadequate Remedy At Law**

The Opposition also ignores MUBI's argument that the UCL claim cannot proceed because

Plaintiffs do not allege that their separate remedies at law are inadequate. Mot. at 23. The Ninth Circuit and this Court have repeatedly and unequivocally held that a "party must sufficiently allege a lack of legal remedy in order to survive a motion to dismiss" a UCL claim. *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1157 (N.D. Cal. 2021) (Davila, J.); *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313-15 (9th Cir. 2022) (holding "district court lacked equitable jurisdiction to hear" UCL claim given that plaintiff had "an adequate legal remedy"). Because Plaintiffs do not dispute that their claims for damages provide an adequate remedy at law, their UCL claim cannot proceed. *Stichting*, 802 F. Supp. 2d at 1132 (rejecting argument not raised in opposition).

**3. Plaintiffs Do Not State an Unlawful or Unfair UCL Claim**

Even putting aside the statutory standing and monetary relief barriers to entry, Plaintiffs cannot meet the requirements of any UCL prong. Plaintiffs acknowledge that their "unlawful prong" claim "rises and falls with the VPPA claim." Opp. at 17. Because that claim is deficient, the UCL claim based on it also fails.

Plaintiffs' "unfair" prong claim likewise fails. Plaintiffs contend that because the VPPA and Section 1799.3 declare an intent "to ensure that consumers' privacy interests in their video viewing history are not invaded," their claim automatically passes the "'tethering' test" and states an unfair prong claim. *Id*. at 17-18 (citation omitted). But even Plaintiffs' cited case on this point admits that it is not clear under California law whether the tethering or balancing test applies to UCL consumer claims. *Cappello v. Walmart Inc*., 394 F. Supp. 3d 1015, 1024 (N.D. Cal. 2019). In any event, Plaintiffs ignore the Ninth Circuit precedent cited in MUBI's brief, which plainly holds that *neither* test is satisfied where a company's terms "warned" the public about the supposedly unfair conditions. *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1170 (9th Cir. 2012). Indeed, as the Ninth Circuit explained, in such a case it is the Plaintiffs' fault for "fail[ing] to read the terms and conditions before agreeing to them." *Id.* Plaintiffs do not dispute that they had every opportunity to read MUBI's Terms when they subscribed; rather, they argue merely that they would have preferred the Terms were presented in a different format. And Plaintiffs' additional argument that the Terms were not "clear and conspicuous" (Opp. at 18) is irrelevant— the *Davis* case involved a similar argument by the plaintiff, which did not impact the Court's

analysis under the UCL unfair prong. *Compare Davis*, 691 F.3d at 1164 *with id.* at 1169-70.[4] Plaintiffs' UCL unfair prong claim should be dismissed.

**E. Plaintiffs Lack Standing to Pursue Injunctive Relief**

Finally, Plaintiffs do not allege an impending future injury under Article III that would support their plea for injunctive relief. Plaintiffs confusingly cite to several paragraphs of the FAC alleging that certain Plaintiffs are subscribers of MUBI's website. Opp. at 18 (citing FAC ¶¶ 11-16 & 18-19). But nowhere do Plaintiffs say they are still using MUBI (much less how) or explain how they will be harmed by continuing to use the platform in the future. *See, e.g.*, FAC ¶ 81 (harm allegation restated for each Plaintiff). Nor would such a claim even be plausible, given that Plaintiffs indisputably know about MUBI's alleged disclosures of their information. *See Trammell v. KLN Enters., Inc.*, 2024 WL 1722243, at *5 (S.D. Cal. Apr. 22, 2024).

Further, that Plaintiffs abstractly allege that MUBI continues to share browsing content generally (Opp. at 18) does not demonstrate that they are *personally* going to be harmed in the future. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (no potential imminent harm for Article III purposes where "[t]he risk of injury the plaintiffs allege is not concrete and particularized *as to themselves*"). Nor does the VPPA's authorization of injunctive relief for those who prove a violation override Article III's standing limitations. *E.g.*, *TransUnion*, 594 U.S. at 426-27 ("[U]nder Article III, an injury in law is not an injury in fact."). Plaintiffs do not plead an imminent risk of future harm that is particularized as to themselves, and therefore cannot pursue that relief under Article III.

## III. CONCLUSION

MUBI respectfully requests that the Court dismiss the FAC in its entirety.

---

[4] *Berman*, 30 F.4th at 856-57 (cited Opp. at 18), has nothing to do with the UCL.

DATED: July 29, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ Michael H. Rubin

Michael H. Rubin (CA Bar No. 214636)
*michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Gary Feinerman (admitted *pro hac vice*)
*gary.feinerman@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone +1.312.876.7700

*Attorneys for Defendant MUBI, Inc.*