United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL EDWARDS, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>MUBI, INC.,<br><br>       Defendant. | Case No. 24-cv-00638-EKL<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING MOTION IN PART**<br><br>Re: Dkt. No. 29 |

      This action arises from Plaintiffs' use of Defendant's online movie library.  Plaintiffs allege that Defendant secretly tracked and shared the movies they viewed on Defendant's website with third parties like Meta, without their consent.  First Am. Compl. ¶ 1, ECF No. 25 ("FAC").  Defendant moves to dismiss the first amended complaint.  Mot. to Dismiss, ECF No. 29 ("Mot.").  For the reasons discussed below, the Court GRANTS the motion with leave to amend as to the unfair competition and injunctive relief claims, GRANTS the motion without leave to amend as to the CIPA claim,[1] and DENIES the motion in all other respects.

## I.    BACKGROUND[2]

      Defendant MUBI, Inc. ("MUBI") offers paid monthly and annual subscriptions that begin with a seven-day free trial.  FAC ¶ 37.  Plaintiffs are MUBI subscribers with Facebook accounts, who have requested and watched videos on MUBI.  *Id.*  ¶¶ 71-171.  Plaintiffs claim that MUBI

---

[1] Plaintiffs claimed that MUBI's conduct violated the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631.  Because Plaintiffs did not oppose MUBI's request to dismiss the CIPA claim, *see* Opp. to Mot. to Dismiss at 3 n.4, ECF No. 33 ("Opp."), the Court dismisses the CIPA claim with prejudice.

[2] Unless otherwise noted, the facts are taken from the complaint and assumed to be true for purposes of this motion.

uses "tracking pixels" on its website, which "secretly and surreptitiously send consumers' viewing histories to third-party providers" like Meta, TikTok, Google, and X (formerly Twitter) without consumers' consent. *Id*. ¶ 1.

The Meta Tracking Pixel is a piece of code integrated into MUBI's website that "watches exactly what consumers choose to watch once they enter MUBI's library of movies." *Id*. ¶¶ 34, 39. It works by capturing online activity and sending a record of that activity to Meta. *Id*. ¶ 34. "MUBI has configured the Meta Tracking Pixel on its website to create a PageView event every time a consumer goes to the webpage playing the video." *Id*. ¶ 39. The PageView "invariably discloses the URL of the webpage, which contains the video title." *Id*. When a user watches a MUBI video while logged into Facebook, the user's browser transmits cookies containing the user's Facebook ID to Meta. *Id*. ¶ 41. Meta uses the cookies to identify particular users and create targeted advertising. *Id*. ¶¶ 44-47. This process allows Meta to know "exactly which particular videos a consumer has requested and obtained." *Id*. ¶ 49.

Plaintiffs claim that by tracking and disclosing their viewing histories, MUBI violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710 *et seq*.; California Civil Code § 1799.3; and California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq*. *See* FAC ¶¶ 179-197, 212-224. On June 5, 2024, MUBI filed a motion to dismiss the first amended complaint, arguing that Plaintiffs fail to state any plausible claims, and lack Article III standing to pursue their VPPA and injunctive relief claims.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1) Motion to Dismiss for Lack of Article III Standing

As the party invoking federal jurisdiction, Plaintiffs bear the burden of demonstrating Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021). To establish Article III standing, Plaintiffs must show that they "[have] suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

**B.        Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl*., 550 U.S. at 556).  For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

If the court finds that dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III.    DISCUSSION

### A.    Plaintiffs Allege Article III Standing Under the VPPA.

MUBI moves to dismiss Plaintiffs' VPPA claim pursuant to Rule 12(b)(1), arguing that Plaintiffs allege a "procedural violation" of the VPPA rather than "actual harm."  Mot. at 7.  Section 2710(b) of the VPPA provides, in relevant part, that a "video tape service provider" may only disclose a consumer's personally identifiable information to the consumer, or to a third party "with the informed, written consent . . . of the consumer."  The informed written consent must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," and must provide the consumer with a "clear and conspicuous manner" to "withdraw on a case-by-case basis" or "to withdraw from ongoing disclosures, at the consumer's

1    election."  18 U.S.C. § 2710(b)(2)(B).

2        MUBI claims that Plaintiffs' "real complaint is not that they were deprived of information

3    about these technologies, or the chance to opt out, but rather that MUBI did not obtain their

4    consent in the specific 'separate and distinct *form* (as required by VPPA).'"  *Id*. at 8 (citing FAC

5    ¶ 62).  But the basis of Plaintiffs' harm is the violation of their substantive privacy right that was

6    allegedly violated by MUBI's unauthorized disclosure of viewing activity to third parties to be

7    exploited for advertising purposes.  *See* FAC ¶ 4.  Plaintiffs do not allege harm based on a mere

8    deficiency of MUBI's disclosure notice.

9        The disclosure of private information is an "intangible harm" that satisfies Article III

10    standing.  *TransUnion*, 594 U.S. at 425.  "[T]he VPPA identifies a *substantive* right to privacy that

11    suffers *any time* a video service provider discloses otherwise private information."  *Eichenberger*

12    *v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017).  "As a result, every 18 U.S.C. § 2710(b)(1)

13    violation 'present[s] the precise harm and infringe[s] the same privacy interests Congress sought

14    to protect' by enacting the VPPA."  *Id*. at 984.  Plaintiffs allege that MUBI discloses users'

15    personally identifiable information ("PII") to Meta via the Meta Tracking Pixel in violation of the

16    VPPA.  FAC ¶¶ 37-53.  These allegations concern substantive privacy rights under the VPPA, and

17    they are sufficient to establish Article III standing.  Plaintiffs also allege that MUBI's inclusion of

18    its data-sharing practice in its Privacy Policy violates the VPPA's requirement that consent be

19    obtained "in a form distinct and separate from any form setting forth other legal or financial

20    obligations of the consumer."  FAC ¶ 67.  But the purpose of this allegation is to establish that

21    MUBI's disclosures do not fall within the VPPA's safe harbor for disclosures made with consent.

22    These allegations are not the basis of Plaintiffs' Article III standing.

23        *TransUnion*, cited by MUBI, lends no support to its "formatting error" argument.  There,

24    the Supreme Court rejected Fair Credit Reporting Act claims by certain class members that arose

25    from incorrectly formatted mailings, noting that such "bare procedural violation[s], divorced from

26    any concrete harm," did not establish Article III standing.  *Trans Union*, 594 U.S. at 440.  Here,

27    Plaintiffs do not allege a bare procedural violation, but rather a substantive harm to their right to

28

United States District Court
Northern District of California

4

1    privacy under the VPPA.[3]  Accordingly, Plaintiffs have plausibly alleged Article III standing.

**B.    Plaintiffs State a Plausible VPPA Claim.**

MUBI contends that Plaintiffs' VPPA claim should be dismissed under Rule 12(b)(6) because Plaintiffs do not allege that MUBI disclosed "which particular videos they 'requested or obtained.'"  Mot. at 9 (citing 18 U.S.C. § 2710(a)(3)).

"[T]o plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)."  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).  The VPPA defines PII to "include[] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  PII is information that would "readily permit an ordinary person to identify a specific individual's video-watching behavior."  *Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016)).

MUBI claims that the Meta Tracking Pixel only discloses the URLs of the webpages that Plaintiffs visited, and that the URLs do not identify which videos they watched.  MUBI submits that "a user can visit a [MUBI] webpage without requesting or obtaining – let alone watching – a video, just like a customer could once walk Blockbuster's aisles and browse through videotapes to see if any were worth renting."  Mot. at 10.  MUBI contends that "most films showcased on MUBI's platform cannot even be watched there," and that "[t]o watch a film on MUBI, a user must click the play button *after* they land on a film's page[,]" which "Plaintiffs do not allege . . . ."  *Id.*  Thus, MUBI asserts, "Plaintiffs do not (and could not) plausibly allege that a PageView transmits any information beyond the fact that they visited a page."  *Id.*

---

[3] MUBI also contends that Plaintiffs lack Article III standing because they do not allege that they "would have done anything differently" had MUBI formatted its disclosures in accordance with VPPA requirements.  Mot. at 8.  The authority cited by MUBI, *Soman v. Alameda Health System*, is factually distinguishable because it concerned Article III standing under the Fair Credit Reporting Act.  No. 17-cv-06076, 2023 WL 336632, at *4 (N.D. Cal. Jan. 20, 2023).  It does not provide support for this argument.

1    MUBI's assertions directly contradict Plaintiffs' allegations that PageView discloses video

2    titles, including videos that Plaintiffs played on MUBI's platform:

> 3    The Meta Tracking Pixel watches exactly what consumers choose to watch once they
> enter MUBI's library of movies.  The title of every film on MUBI is reflected in the
> 4    URL of the page.  And MUBI has configured the Meta Tracking Pixel on its website
> to create a PageView event every time a consumer goes to the webpage page playing
> 5    the video.  And the PageView invariably discloses the URL of the webpage, which
> contains the video title.

6

7    FAC ¶ 39 (emphasis added); *see also id*. at 12, Fig. 2; *id*. at 13, Fig. 4.  Similarly, MUBI's

8    suggestion that Plaintiffs did not click the "play" button on a film's page ignores numerous

9    allegations in the complaint that Plaintiffs "frequented MUBI to watch videos on a regular basis"

10    and "requested or obtained specific video materials or services."  FAC ¶¶ 73-74; *see also id.* ¶¶ 87,

11    99, 110, 121, 132, 143, 154, 165 (alleging that Plaintiffs "watched videos on MUBI").

12    MUBI's argument creates a factual dispute regarding whether the videos reflected in the

13    URLs disclosed to Meta were available on MUBI's website, and if so, whether Plaintiffs

14    requested, obtained, or watched them.[4]   The Court does not resolve factual disputes on a motion

15    to dismiss.  *See Ghanaat v. Numerade Lab'ys, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023)

16    ("Whether a URL sufficiently identifies a video is ultimately a factual question that should not be

17    resolved on motion to dismiss." (citing *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336

18    (N.D. Ga. 2023)).  Rather, the Court accepts the truth of Plaintiffs' factual allegations and

19    construes them in Plaintiffs' favor.  *Manzarek*, 519 F.3d at 1031.  Plaintiffs allege that MUBI

20    discloses users' PII via the Meta Tracking Pixel without obtaining proper consent.  *See* FAC

21    ¶¶ 37-53, 59-70.  Accordingly, the Court finds that Plaintiffs have stated a plausible claim under

22    the VPPA and denies the motion to dismiss this claim.

23

24

25    [4] MUBI's reliance on *Martin v. Meredith Corporation* for this argument is misplaced.  657 F.
Supp. 3d 277 (S.D.N.Y. 2023).  *Martin* is distinguishable.  There, the court found that the plaintiff
26    did not state a VPPA claim because the version of the Meta Pixel used by the defendants omitted
the names of videos watched on the People.com website, and the complaint "acknowledge[d] that
27    not all of People.com's content pages even include[d] videos."  *Id.* at 284.  The court noted that
"essential" information was omitted, including whether the webpages in question contained
28    videos.  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

C.     **Plaintiffs State a Plausible Claim Under California Civil Code Section 1799.3.**

"Section 1799.3(a) provides that '[n]o person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information . . . to any person, other than the individual who is the subject of the record, without the written consent of that individual.'" *Mollett*, 795 F.3d at 1067 (quoting Cal. Civ. Code § 1799.3(a)).  MUBI cites four reasons for dismissal under Rule 12(b)(6):  (1) Plaintiffs fail to plausibly allege the disclosure of PII; (2) Plaintiffs consented to the disclosure of their PII; (3) Plaintiffs fail to allege that MUBI provides "video recording sales or rental services"; and (4) Plaintiffs fail to allege the transmission of PII via the X and TikTok Pixels (in addition to the Meta Tracking Pixel).  The Court addresses each in turn.

1.     **Plaintiffs allege unauthorized disclosure of "sales or rental information."**

MUBI argues that Plaintiffs do not plausibly allege that MUBI disclosed the "contents of any record, including sales or rental information" associated with them.[5]  Mot. at 13.  This argument relies on the same factual dispute identified above regarding whether MUBI discloses the titles of videos that Plaintiffs watched or requested.  *See* Section III.B.  As with Plaintiffs' VPPA claim, the Court assumes the truth of Plaintiffs' allegations and does not resolve this factual dispute at this stage.  *See Ghanaat*, 689 F. Supp. 3d at 721.  Accordingly, the Court denies the motion on this ground.

2.     **Plaintiffs did not consent to the disclosure of their information.**

Section 1799.3 requires "written consent" for the disclosure of "any personal information or the contents of any record, including sales or rental information . . . to any person, other than the individual who is the subject of the record."  Cal. Civ. Code § 1799.3(a).  MUBI argues that Plaintiffs cannot plausibly state a section 1799.3 claim because they consented to the disclosure of

---

[5] MUBI requests judicial notice of three exhibits consisting of legislative history for section 1799.3.  Request for Jud. Notice, ECF No. 31 ("RJN"); Decl. of Michael H. Rubin Exs. E-G, ECF No. 30-2 ("Rubin Decl.").  The unopposed request is granted.  *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice." (citing *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005))).

their PII by agreeing to the privacy policy while registering for MUBI.

In this case, the existence of consent depends on whether Plaintiffs agreed to MUBI's privacy policy. The privacy policy, which is accessible via hyperlinks on MUBI's website, explains MUBI's practice of sharing consumers' PII with third parties. FAC ¶¶ 65, 66, 68; *id*. at 23, Figs. 26, 27. "In California, internet contracts are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.'" *Keebaugh v. Warner Bros. Ent. Co*., 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021)). This case involves a sign-in wrap agreement: "[T]he website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla v. ClassPass Inc*., 129 F.4th 1147, 1154 (9th Cir. 2025).[6] Absent proof that a consumer has actual knowledge of the agreement, a sign-in wrap agreement will be enforced only if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). The Court begins by describing the sign-in wrap agreement on MUBI's website, and then turns to the issues of notice and consent.

### a.    MUBI's sign-in wrap agreement

A MUBI user encounters two pages in the course of creating a MUBI account: a home page where users can sign up for a seven-day free trial ("Home Page"), and a second page where users enter their payment information to begin the trial ("Payment Page"). FAC ¶¶ 63-64; *id*. at 21, Figs. 10, 11; *id*. at 22, Fig. 12; *id*. at 24, Fig. 18; *id*. at 25, Figs. 19, 20;[7] *see also* Rubin Decl. Ex. B. The parties submit different versions of the Home Page, but both versions reflect

---

[6] The Ninth Circuit issued its *Chabolla* opinion after briefing closed and after the Court heard oral argument on MUBI's motion. Although *Chabolla* concerned a motion to compel arbitration, the Court finds the Ninth Circuit's discussion of the two-part *Berman* test to be useful in the present context of MUBI's motion to dismiss the section 1799.3 claim.

[7] For ease of reference, the Court includes Plaintiffs' Figures 10-12 and 18-20 in the Appendix to this Order.

consistent design elements.[8]

The background of the Home Page displays "rolling clips of movies available on MUBI." FAC ¶ 69; *id*. at 21, Fig. 10; *id*. at 24, Fig. 18; *id*. at 25, Figs. 19, 20; Rubin Decl. Ex. B.  The movie scenes displayed in the background appear to vary.  FAC at 21, Fig. 10; *id*. at 24, Fig. 18; *id*. at 25, Figs. 19, 20; Rubin Decl. Ex. B.  At the top of the Home Page, the phrase "WATCH GREAT CINEMA" appears in large white font.  In the bottom third of the Home Page, MUBI invites the user to "Try 7 Days Free" in smaller, but still prominent, white font.  Beneath that text is a prominent white box where users may enter their email address.  Next to the email address field is a dark blue box that states "GET STARTED" in contrasting white font.  Beneath these boxes is a sentence in very small, all-white font, stating, "By clicking 'Get started' you are indicating that you have read and agree to the <u>Terms of Service</u> and <u>Privacy</u>."  The underlined phrases are hyperlinked to MUBI's terms of service and privacy policy.  FAC at 21, Figs. 10, 11; *id*. at 24, Fig. 18; *id*. at 25, Figs. 19, 20; Rubin Decl. Ex. B.  Other than the underlining, the hyperlinks are not emphasized using any other common web design elements, such as the use of contrasting color font.  This notice language appears five times smaller than the "Try 7 Days Free" text, and is much smaller than the prominent "WATCH GREAT CINEMA" text.

The version of the Home Page submitted by MUBI consists of five pages.  Rubin Decl. Ex. B.  The first page includes the rolling movie clip background with a cookie banner directly beneath.  The banner states, "We use cookies to ensure that we give you the best experience on our website.  **Click here** for more information."  Below the cookie banner, the user may click one of two buttons:  a dark button stating "ACCEPT" in white text, and a white button stating "REJECT" in gray text.  The second page is a blank white page.  The third and fourth pages feature MUBI

---

[8] MUBI requests that the Court incorporate four exhibits into the first amended complaint by reference.  RJN at 1; Rubin Decl. Exs. A-D.  According to MUBI, the exhibits consist of portions of its home page and privacy policy, which are discussed in detail in the first amended complaint. RJN at 2-3; *see also* FAC ¶¶ 63-66; *id*. at 21, Figs. 10, 11; *id*. at 22, Fig. 12; *id*. at 23, Figs. 13-15, 26, 27. The unopposed request is granted.  *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018) ("[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003))).

United States District Court
Northern District of California

promotional language (both containing MUBI's cookie banner in tiny dark font).  The fifth page features a white static background with "Try 7 Days Free" in large, dark font; beneath this is a white email field next to a dark blue box that states "GET STARTED" in white font.  Directly beneath these boxes, in very small gray text, it states:  "By clicking 'Get started' you are indicating that you have read and agree to the Terms of Service and Privacy."  Here, unlike the top portion of the Home Page, the "Terms of Service" and "Privacy" are in contrasting blue font, indicating hyperlinks.  *Id*.

The Payment Page features a dark background with a large white square in the middle. FAC at 22, Fig. 12.  In the top of the square, the Payment Page states:  "7 FREE DAYS OF MUBI."  Below that, in smaller gray text, it states "Please enter your payment details."  Below that, users may enter their credit card details.  Below both of these sections, in small gray text, the Payment Page states, "At the end of your free trial, your MUBI membership will begin automatically at $12.99 a month.  You can cancel anytime.  See **Terms & Conditions**."  Below that is a dark blue box that states, "START FREE TRIAL" in contrasting white font.  *Id*.

### b.    Reasonably conspicuous notice

Courts consider several factors to determine whether a website provides reasonably conspicuous notice of a sign-in wrap agreement.  *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 514-15 (9th Cir. 2023) (observing that the reasonable notice inquiry is context- and fact-specific). First, courts consider the "context of the transaction," including the "nature of the service or goods offered."  *Chabolla*, 129 F.4th at 1155.  Where a transaction involves a "continuing relationship" with the website operator, the user should expect to be "bound by terms, even if not explicitly told."  *Id*.  Second, courts consider visual aspects of the website.  *Id*.  The notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it."  *Berman*, 30 F.4th at 856.  When small or hard-to-read font is used, the "comparatively larger font used" for other elements of the webpage may "direct[] the user's attention everywhere else."  *Id*. at 856-57.  If a hyperlink is used to disclose terms and conditions, "the fact that a hyperlink is present must be readily apparent."  *Id*. at 857.  "A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is

sufficiently 'set apart' from the surrounding text."  *Id*.  The "overall design" of the website is important:  a cluttered design may contain "visual elements [that] draw the user's attention away" from important terms.  *Id*.

The first factor, the context of the parties' transaction, does not further the Court's determination as to whether Plaintiffs should have searched for applicable terms.  MUBI contends, for the first time in its reply brief, that the registration process itself "clearly contemplated some sort of continuing relationship . . . that would require some terms and conditions," and notes that Plaintiffs had three opportunities to click through to the privacy policy containing its disclosure policy while subscribing to MUBI.[9]  Reply in Support of Mot. at 10, ECF No. 35 ("Reply").  Plaintiffs allege that they created MUBI accounts and subscribed to MUBI.  *See* FAC ¶¶ 72, 84, 96 107, 118, 129, 140, 151, 162.

It is not clear whether Plaintiffs initially signed up for the free trial and were automatically enrolled after the trial ended, or whether Plaintiffs intended to subscribe to MUBI from the outset. The former scenario suggests that Plaintiffs did not expect a continuing relationship that would have put them on notice of the need to locate and review applicable terms and policies.  *See, e.g*., *Sellers*, 73 Cal. App. 5th at 477 (finding that defendant's offer of $5 "trial" of defendant's services did not put plaintiffs on notice that they were entering an ongoing relationship governed by extensive contractual terms); *see also Chabolla*, 129 F.4th at 1155-56 (finding that defendant's invitation to "join ClassPass" as a "plan" or "membership" could have indicated either an ongoing relationship or a one-time purchase, and therefore did not weigh clearly in favor of or against notice).  The latter suggests that Plaintiffs may have understood that the use of MUBI's website "would be governed by some terms of use."  *Keebaugh*, 100 F.4th at 1020 (finding that users who downloaded a mobile game to their phones that involved "potentially unlimited in-app purchases" would understand that use of the app "would be governed by some terms of use").  In light of this

---

[9] MUBI raised this issue for the first time in its reply brief.  Generally, "reply briefs are limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion." *Stiner v. Brookdale Senior Living, Inc*., 665 F. Supp. 3d 1150, 1179 (N.D. Cal. 2023) (quotation omitted).

1    ambiguity, and because it is MUBI's burden to establish consent, the Court finds that the context

2    of the transaction "neither weighs in favor of nor against the notice requirement." *Chabolla*, 129

3    F.4th at 1156.

4           The Court next considers the visual elements of the website.  The Court finds that the

5    notice on the Home Page is not reasonably conspicuous for three reasons.  First, the notice on the

6    main part of the Home Page is in tiny white font, below two prominent boxes that invite users to

7    enter an email address and click "GET STARTED."  The underlined phrases "Terms of Service"

8    and "Privacy" are hyperlinks, but they appear in the same tiny white font "as the rest of the

9    sentence, rather than in blue, the color typically used to signify the presence of a hyperlink."

10   *Berman*, 30 F.4th at 854; *see also id.* at 857 ("A web designer must do more than simply

11   underscore the hyperlinked text[.]").  Second, the notice is set against a dynamic background of

12   rolling movie clips that change over time and distract the user's attention.[10]  *See* FAC at 21, Fig.

13   10; *id*. at 24, Fig. 18; *id*. at 25, Figs. 19, 20; Rubin Decl. Ex. B.  These visual elements "naturally

14   direct[] the user's attention everywhere else," drawing "the user's attention away from the barely

15   readable critical text."  *Berman*, 30 F.4th at 857.  Third, although the Home Page provides a

16   second notice lower down that is set against a static white background and contains traditional

17   blue hyperlinks, and is therefore more conspicuous, it still suffers from two deficiencies:  the

18   notice is in very small font, and it appears that the user must scroll down a significant distance

19   from the first part of the Home Page.[11]  *See* Rubin Decl. Ex. B.  Users would have no reason to do

20   so, since clicking on the prominent "GET STARTED" button at the top would automatically direct

21   them to the page where they can start the trial.  Given these deficiencies and distracting design

22   details, the Home Page did not give Plaintiffs reasonably conspicuous notice of the privacy policy.

23          The Payment Page also fails to provide reasonably conspicuous notice.  There, the notice

24   states, "At the end of your free trial, your MUBI membership will begin automatically at $12.99 a

25   _____

26   [10] MUBI contends that the contrast of static white text against a dramatic dark background serves
     to highlight the notice, citing *Keebaugh*.  *Keebaugh* is distinguishable because the defendant's
27   home page featured white text against a static dark background.  100 F.4th at 1010-11.

     [11] The Court cannot determine from MUBI's exhibit how far below the main part of the Home
28   Page this section is located.

month.  You can cancel anytime.  See Terms & Conditions."  FAC at 22, Fig. 12.  "Terms &

Conditions" is in blue font, indicating it is hyperlinked to MUBI's terms, but there is no language

indicating that the terms in question relate to MUBI's PII disclosure policy, which is "buried

several pages deep" in the Privacy Policy.  FAC ¶ 68; *id*. at 22, Fig. 12.  The notice language

suggests instead that the "Terms & Conditions" concern either the membership price or

information about how to cancel one's membership.  *See Chabolla*, 129 F.4th at 1159.  These

design choices do not provide users with reasonably conspicuous notice of MUBI's terms of

service or privacy policy.

The lack of notice is dispositive, but the Court also addresses the issue of assent in light of

the dispute over the consent element of Plaintiffs' section 1799.3 claim.

### c.     Unambiguous manifestation of assent

To create their MUBI accounts, Plaintiffs must have clicked the "GET STARTED" button.

But "[a] user's click of a button can be construed as an unambiguous manifestation of assent only

if the user is explicitly advised that the act of clicking will constitute assent to the terms and

conditions of an agreement."  *Berman*, 30 F.4th at 857.  A website must use clear language to

indicate what action will bind the user to the terms.  *See id*. at 858 (holding that assent was lacking

because the webpage "did not indicate to the user what action would constitute assent").

Here, MUBI's website did not provide Plaintiffs with conspicuous notice.  The distracting

design of the Home Page draws the user's attention "away from the barely readable critical text."

*Id*. at 857.  And the notice on the Payment Page was "muddled by language regarding

[subscription fees and membership cancellation], which may or may not be relevant to the user's

transaction," and "[a] reasonable user could easily assume the notice pertains to [subscription fees

and membership cancellation] and hastily skim past it."  *Chabolla*, 129 F.4th at 1157.

MUBI contends that its website presents users with multiple opportunities to click through

to its terms of service and privacy policy.  Reply at 9 ("It is likewise pertinent that Plaintiffs were

presented with multiple opportunities to click through to MUBI's Terms over the course of the

subscription process.").  But this does not change the Court's conclusion, since none of those

opportunities provided meaningful notice.  The Court considers "the visual aspects of every page

United States District Court
Northern District of California

of a multi-page transaction . . . together." *Chabolla*, 129 F.4th at 1155.  MUBI cannot conjure an inference of consent by combining independently insufficient elements of notice and consent across different webpages.  *See Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1040 (N.D. Cal. 2024) ("The obvious problem is that aggregating individually insufficient forms of notice does not somehow add up to a positive."), *appeal docketed*, *Godun v. JustAnswer LLC*, No. 24-2095 (9th Cir. Apr. 4, 2024).

MUBI claims that Plaintiffs consented to the PII disclosure policy because they "admit" they "in fact clicked the hyperlinks and visited the policies."  Mot. at 14.  It is true that the complaint describes how clicking the "Terms of Service" and "Privacy" hyperlinks leads to the full terms and privacy policy.  *See* FAC ¶ 65.  But Plaintiffs do not allege that they clicked these hyperlinks.  To the contrary, Plaintiffs allege that MUBI's website does *not* provide sufficient notice to users, *id.* ¶ 69, and that they did *not* consent to disclosure, in writing or otherwise, *id.* ¶¶ 77, 89, 101, 112, 123, 134, 145, 156, 167.

In sum, MUBI has not demonstrated that it gave Plaintiffs reasonably conspicuous notice of its terms of use or privacy policy, or that Plaintiffs unambiguously manifested their assent to those terms.  Because these important elements are lacking, MUBI cannot show that Plaintiffs provided written consent to the disclosure of their PII to Meta or any other third party.  Accordingly, the Court denies MUBI's motion to dismiss the section 1799.3 claim on this ground.

### 3.    Plaintiffs allege that MUBI is in the business of providing "video recording sales."

Next, MUBI claims that Plaintiffs fail to plausibly allege that MUBI is in the business of "providing video recording sales or rental services."  Mot. at 16.  MUBI notes that section 1799.3 does not define the term "sales or rental services," and urges the Court to apply the Merriam-Webster dictionary definitions of the terms "sale" and "rent."  *Id.*  This argument is unconvincing, as courts in the Ninth Circuit have found that similar websites where account holders can purchase video content "'provide[] video recording sales' under [section] 1799.3."  *See, e.g.*, *Fan v. NBA Props. Inc.*, No. 23-cv-05069-SI, 2024 WL 1297643, at *2-3 (N.D. Cal. Mar. 26, 2024) (finding that defendant "provide[d] video recording sales" under section 1799.3 because it operated a

14

website on which "users can buy, sell, and trade" pre-recorded video clips of NBA players performing "highlight-worthy plays").  MUBI contends that its subscription service "is separate and distinct from a sale or a rental service," Reply at 10, but fails to meaningfully distinguish its website from the clips available for purchase or trade in *Fan*.  The Court finds that Plaintiffs have plausibly alleged that MUBI provides "video recording sales or rental services" for purposes of their section 1799.3 claim.

### 4.    Plaintiffs allege that MUBI transmits information via the TikTok and X Pixels.

Finally, MUBI argues that Plaintiffs' section 1799.3 claim fails in part with respect to the alleged transmission of PII via the TikTok and X Pixels.  The first amended complaint includes far more allegations concerning the Meta Tracking Pixel, *see* FAC ¶¶ 1, 11-19, 34-53, 67, 71, 83, 95, 106, 117, 128, and fewer allegations concerning MUBI's use of the TikTok and X Pixels to transmit user PII to third parties, *see, e.g.*, *id.* ¶¶ 54, 56-58; *id.* at 17, Fig. 6; *id.* at 18, Fig. 7; *id.* at 19, Figs. 8, 9.  But the Court finds that the allegations as pleaded reflect that MUBI used all three Pixels to transmit PII to third parties without consent.  Although more detailed facts concerning MUBI's specific use of the TikTok and X Pixels may be obtained in discovery, the Court finds that the current allegations are sufficient for the pleading stage.  Accordingly, the motion to dismiss the section 1799.3 claim is denied.

### D.    Plaintiffs Have Not Stated a Plausible UCL Claim.

MUBI moves to dismiss Plaintiffs' UCL claim for lack of statutory standing, failure to plead an inadequate remedy at law, and failure to state a claim under the UCL's "unfair" or "unlawful" prongs.  The Court agrees that Plaintiffs have not alleged an inadequate remedy at law, and grants the motion as to the UCL claim with leave to amend.

"To bring a UCL claim, a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (citing Cal. Bus. & Prof. Code § 17200).  To state a claim under the UCL, Plaintiffs must allege that an adequate remedy at law is unavailable.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)

1    (dismissing UCL claim for equitable restitution where "operative complaint [did] not allege that

2    [the plaintiff] lack[ed] an adequate legal remedy").  Plaintiffs seek equitable relief under the UCL

3    in the form of restitution, injunctive relief, and declaratory relief, based on the underlying alleged

4    statutory violations.  FAC ¶¶ 213-224.  However, the first amended complaint does not allege that

5    Plaintiffs lack an adequate legal remedy for their claims.[12]  Accordingly, Plaintiffs cannot state a

6    UCL claim.  The Court therefore grants MUBI's motion to dismiss this claim with leave to amend.

7            The Court briefly addresses MUBI's other arguments, though neither provides a basis to

8    dismiss the UCL claim.  First, to establish standing under the UCL, plaintiffs must "(1) establish a

9    loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.*, *economic*

10   *injury*, and (2) show that that economic injury was the result of, *i.e.*, *caused by*, the unfair business

11   practice or false advertising that is the gravamen of the claim."  *Van Patten v. Vertical Fitness*

12   *Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th

13   310, 322 (2011)).  Plaintiffs' allegations make this showing.  *See* FAC ¶ 219 (alleging that

14   Plaintiffs "suffered an injury in fact and lost money or property as a result of [MUBI's] practice of

15   disclosing their personal information" because they "paid more in subscription fees than they

16   would have had they been previously aware of" this practice).[13]  Plaintiffs' "price premium

17   theory" of economic injury "is cognizable under California's UCL[.]"  *In re Vizio, Inc., Consumer*

18   *Privacy Litig.*, 238 F. Supp. 3d 1204, 1219 (C.D. Cal. 2017).  Plaintiffs' allegations are sufficient

19   to state economic injury under the UCL.

20           Second, Plaintiffs have alleged a UCL violation under both prongs of the statute that are

21   relevant here.  Plaintiffs satisfy the statute's "unlawful" prong by pleading underlying violations

22   of the VPPA and section 1799.3.  *See* FAC ¶¶ 214-218; *see also Hammerling v. Google LLC*, 615

23   F. Supp. 3d 1069, 1094 (N.D. Cal. 2022) ("Under the unlawful prong, injured customers base their

24

25   ------------------------

     [12] Plaintiffs' opposition does not address this argument.

26   [13] MUBI argues that Plaintiffs fail to allege economic harm because it disclosed the use of the
     Pixels, told users how to disable them, and "required subscribers like Plaintiffs to certify that they
27   read and agreed to MUBI's terms."  Mot. at 22.  But, as discussed above, Plaintiffs plausibly
     allege that they did not give written consent to MUBI's disclosures of their confidential
28   information.  *See supra* Section III.C.2.c.

United States District Court
Northern District of California

claims on violations of other causes of actions.") (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 880 (1999)).  Plaintiffs satisfy the statute's "unfairness" prong by alleging conduct that is "tethered to" underlying public policy violations related to the VPPA's privacy protections.  *See* FAC ¶¶ 214-215; *see also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (Under the UCL's "unfairness" prong, courts consider:  "(1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law[.]'").

Thus, although Plaintiffs have plausibly pleaded other elements of their UCL claim, they have not alleged an inadequate remedy at law.  Accordingly, the Court grants the motion to dismiss the UCL claim, with leave to amend.

> **E.     Plaintiffs Fail to Allege Standing to Pursue Injunctive Relief.**

Plaintiffs seek injunctive relief under the VPPA and section 1799.3 "as is necessary to protect the interests of Plaintiffs and the California Class," FAC ¶¶ 188, 197, and unspecified injunctive relief under the UCL, *id.* ¶ 224.  Plaintiffs must demonstrate Article III standing to obtain injunctive relief.  *Ramirez*, 594 U.S. at 431 ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)[.]").  To establish a right to forward-looking relief, they must demonstrate that they face "a substantial risk of future injury."  *Murthy*, 603 U.S. at 69.

MUBI claims that Plaintiffs lack Article III standing to pursue injunctive relief because they do not allege facts showing a risk of future injury – specifically, their alleged harm is based only on *past* use of MUBI, and Plaintiffs have not alleged that they are currently using MUBI or intend to do so in the future.  Plaintiffs point to their allegation that some Plaintiffs are current MUBI subscribers, *e.g.*, FAC ¶ 11 ("Plaintiff Edwards *is* a subscriber to MUBI's website"), and contend they have established "a substantial risk of future injury" resulting from MUBI's disclosure of PII.  But those allegations do not reflect that any of the Plaintiffs continue to use MUBI to watch video content or intend to do so in the future.  Moreover, Plaintiffs allege that they would not have paid for a MUBI subscription if they had been aware of MUBI's disclosure

practice, or would have paid significantly less.  *See, e.g.*, *id.* ¶ 92.  Since Plaintiffs' complaint is based on their prior lack of awareness of MUBI's disclosure practices, the allegation that they remain MUBI subscribers does not create a reasonable inference that Plaintiffs will continue to watch films on MUBI.  Accordingly, Plaintiffs have not alleged a "substantial risk of future injury" based on MUBI's ongoing or future disclosure of PII to third parties.  *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1248 (N.D. Cal. 2017) (holding that plaintiffs failed to show a "real or immediate threat" of future injury because they did not allege current or intended future purchases of video advertisements from Facebook).  Because Plaintiffs fail to allege Article III standing, the Court grants the motion to dismiss Plaintiffs' claims for injunctive relief with leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS MUBI's motion in part with leave to amend as to Plaintiffs' UCL claim and Plaintiffs' claims for injunctive relief.  The Court GRANTS the motion without leave to amend as to Plaintiffs' CIPA claim, and DENIES the motion in all other respects.

Plaintiffs may file an amended complaint within 21 days of this Order.  Plaintiffs have one final opportunity to plead facts that support a UCL claim and establish Article III standing for injunctive relief.  The failure to cure the deficiencies identified in this Order will result in the dismissal of Plaintiffs' UCL and injunctive relief claims with prejudice.

**IT IS SO ORDERED.**

Dated:  March 31, 2025

Eumi K. Lee
United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX**[14]

**FAC at 21, Fig. 10:  Home Page**



**FAC at 21, Fig. 11:  Home Page**



---

[14] The Court has maintained the original numbering for Figures 10, 11, 12, 18, 19, and 20.

**FAC at 22, Fig. 12:  Payment Page**



**FAC at 24, Fig. 18:  Home Page**



United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**FAC at 25, Fig. 19:  Home Page**



**FAC at 25, Fig. 20:  Home Page**

